|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br>In re                                                                 :<br><br>RELATIVITY FASHION, LLC, et al.,[1]       :<br><br>        Debtors.                                             :<br>------------------------------------------------------X | Hearing Date: September 28, 2015<br>Hearing Time: 11:00 a.m.<br><br>Chapter 11<br><br>Case No. 15-11989 (MEW)<br><br>(Jointly Administered) |

**UNITED STATES TRUSTEE'S
(A) OBJECTION TO DEBTORS' MOTION
TO FILE THEIR REPLY AND DECLARATION
OF LUKE S. SCHAEFFER UNDER SEAL
AND (B) REQUEST TO VACATE SEALING ORDER**

**TO THE HONORABLE MICHAEL E. WILES,
UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), by and through his counsel, respectfully submits this objection to the Debtors' Motion to File their Reply and the Declaration of Luke S. Schaeffer Under Seal (ECF No. 442) (the "Sealing Motion") and requests that the Court vacate its Sealing Order (as hereinafter defined).

**Background**

1. On September 15-16, 2015, the Debtors filed their redacted reply (the "Reply") (ECF No. 440) to the UST Original Objection (ECF No. 384) and accompanying redacted declaration of Luke S. Schaeffer ("Schaeffer Dec." or "Schaeffer Declaration") (ECF No. 442), respectively.

2. On September 16, 2015, the Debtors also filed a motion to file the Reply and Schaeffer Declaration under seal (ECF No. 441) (the "Sealing Motion"). According to the

---

[1] The "Debtors" in these Chapter 11 cases are set forth in the attachment. Unless otherwise stated, the United States Trustee incorporates by reference definitions set forth in the Debtors' Reply (ECF No. 440) and his objection (the "Original Objection") (ECF No. 384) to the Original KEIP and Original KERP and his supplemental objection to the Revised KEIP, the Forman/Marcus Plan and the Revised KERP (collectively, the "Revised Bonus Plans").

Sealing Motion, the financial information and compensation information relating to employees is commercially sensitive, and disclosure thereof would harm the Debtors' business and depress their going concern value in connection with the pending sale process (id. ¶ 16). They further argue that "[i]n an effort to reduce the amount of information that would be sealed, the Debtors have redacted only the names of certain employees and the compensation amounts that the specific employees would receive under both the Key Employee Incentive Plan and the Employee Retention Plan" (id.).

3. On September 16, 2015, counsel to the Debtors agreed with counsel for United States Trustee to adjourn the Sealing Motion on a date to be heard with their Revised Plans (Declaration of Serene K. Nakano ("Nakano Dec.")). The hearing on these motions is now scheduled for September 28, 2015.

4. On September 21, 2015, the Court entered an order granting the Sealing Motion (ECF No. 540) (the "Sealing Order").

**Preliminary Statement**

The United States Trustee does not dispute that sensitive commercial information such as projected Cash Receipts and Projects Sold may be appropriately redacted. However, as set forth below, the Debtors seek to redact information of the type already disclosed in the Original KEIP and KERP, such as the names of the beneficiaries and the sizes of certain of the bonus pools, without any explanation as to why such information should now be redacted. In such circumstances, redaction is inappropriate.

The United States Trustee respectfully requests that the Sealing Order be vacated inasmuch as the Debtors apparently neglected to inform Chambers that they had agreed to

adjourn the Sealing Motion to be heard at the same time as the motion to approve the Revised Bonus Plans.

## Objection

### A. Motion To Vacate: General Standards

Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a[n] ... order .. or proceeding for the following reasons:
> \* \* \*
> (2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> \* \* \*
> (6)    any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(2), (6). Such a motion must be made within a reasonable time. Fed. R. Civ. P. 60(c).

As stated by the Second Circuit:

> Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. In other words it should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened. The Rule may not be used as a substitute for a timely appeal. Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances [in] ... the sound discretion of the ... court ....

Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986) (internal citations and quotations omitted); see also In re Enron Corp., 352 B.R. 363, 369 (Bankr. S.D.N.Y. 2006) (these grounds should be liberally construed when substantial justice will be served). "Additional requirements are that (i) the supporting evidence be 'highly convincing;' (ii) there be good cause for the movant's failure

3

to act sooner; and (iii) application of the rule not impose undue hardship on other parties." In re Old Carco, LLC, 423 B.R. 40, 45 (Bankr. S.D.N.Y. 2010), aff'd, 2010 WL 3566908 (S.D.N.Y. Sep. 14, 2010), aff'd, 420 Fed. Appx. 89 (2d Cir. 2011).  A decision concerning a Rule 60(b) motion is within the discretion of the court.  Id., 423 B.R. at 45.

  Rule 60(b)(6), which permits a court to grant relief from a final order for "any other reason that justifies relief":

> confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case .... [I]t is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship[.]

Pichardo v. Ashcroft, 374 F.3d 46, 55-56 (2d Cir. 2004) (internal quotations and citations omitted; court's brackets); see also Andrulonis v. United States, 26 F.3d 1224, 1235 (2d Cir. 1994) (Rule 60(b)(6) properly "invoked to override the finality of judgments in the interests of justice"); Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986) (Rule 60(b)(6) confers broad discretion on the trial court to grant relief when appropriate to accomplish justice).  Thus, subject to the caveat that relief under this subsection may not be based upon a reason included in subclauses (1)-(5), see Nemaizer, 793 F.2d at 63, Rule 60(b)(6) serves as an effective catch-all.

  Here, the Debtors had agreed to adjourn their Sealing Motion to be heard at the same time as the motion on the Revised Bonus Plans (see Nakano Dec.).  To the extent that the Court was unaware of the parties' agreement to adjourn the Sealing Motion, relief pursuant to Rule 60(b)(2) (newly-discovered evidence) or 60(b)(6) (catch-all provision) would be appropriate.  Despite the parties' intent to permit the United States Trustee an opportunity to respond to the Sealing Motion, the Debtors apparently submitted a proposed Sealing Order to

4

Chambers, which was thereafter entered, and/or neglected to advise Chambers of their agreement to adjourn.  In light of the Debtors' apparent error, the Sealing Order should be vacated.

**B.    Sealing Motion - General Principles**

Section 107(a) of the Bankruptcy Code provides, in part, that subject to certain limited exceptions:

> a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a).  "There is a strong presumption and public policy in favor of public access to court records."  In re Borders Grp., Inc., 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011); see, also, In re Food Mgmt. Grp., LLC, 359 B.R. 543, 553-55 (Bankr. S.D.N.Y. 2007) (Section 107 reflects Congress' intent to favor public access to papers filed with the Bankruptcy Court).

Congress has "implemented a statutory exemption to prevent disclosure of commercial information in a bankruptcy case."  Borders, 462 B.R. at 46.  Section 107(b) of the Bankruptcy Code provides in relevant part that:

> [o]n request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).[2]  "The exception to the general right of access in section 107(b) is narrow." Borders, 462 B.R. at 47.  The burden is on the moving party to show that a request to place

---

[2]  Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under Section 107(b). Fed. R. Bankr. P. 9018.

documents under seal falls within the parameters of Section 107(b). Id. at 46; Food Mgmt., 359 B.R. at 561.

Under Section 107(b), "commercial information" has been defined as information which would cause an "unfair advantage to competitors by providing them information as to the commercial operations" of the requesting party. In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994)(internal quotations omitted); accord Borders, 462 B.R. at 47. As this Court has stated:

> the term ["commercial information"] includes situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations, ultimately affecting the viability of Debtors. Moreover, the Court must also find that the redacted information is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors.

Borders, 462 B.R. at 47-48 (internal quotations, citations and brackets omitted).

Finally, the proposed redactions should be viewed against Congress' amendment to Section 503 in 2005:

> In 2005, Congress made significant changes to the Bankruptcy Code. BAPC[P]A, as the Act amending the Code is now called, took specific aim at Congressional concern over what it viewed as KERP abuses. The import of the BAPC[P]A provisions dealing with KERPs was Congress's effort to eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process. BAPC[P]A imposed a set of challenging standards debtors must meet to have "stay" bonuses approved.

In re Global Home Prods., LLC, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (internal quotation omitted); accord In re Hawker Beechcraft, Inc., 479 B.R. 308, 312-13 (Bankr. S.D.N.Y. 2012) (discussing KEIPs).

**C.    The Objectionable Redactions**

Some of the Debtors' proposed redactions do not deserve protection under Section 107, especially in light of Congress' concerns in amending Section 503. And other redactions, absent further explanation, appear unwarranted in light of public disclosures made in the Debtors' Original KEIP and KERP Motions:

- In the Original KEIP Motion, the maximum amount of Thomas Forman's proposed bonus could be calculated using publicly-available information, i.e., $314,868, assuming the other four Executives received no bonus (ECF No. 281 ¶ 20). However, the Debtors now propose to seal the amount of the TV Pool, thereby shielding Forman's maximum proposed bonus from public scrutiny (Reply ¶ 17; Schaeffer Dec. ¶ 17). The Debtors also seek to redact both the proposed split between Forman and Marcus and that Forman will receive the lion's share of the TV Pool (Schaeffer Dec., Exh. 3). There is no explanation as to why, if Forman's maximum bonus (subject to board approval) was disclosed in the Original KEIP Motion, it is being kept secret here.

- The Original KEIP Motion disclosed the cost of the KEIP Pool (Original KEIP Motion, ECF No. 281 ¶ 20). However, the cost of the Revised KEIP, including the Newly Added KEIP Executives, is redacted (Reply ¶ 13; Schaeffer Dec. ¶ 13). The Debtors have not fulfilled their burden of justifying the redaction of this critical information.

- All of the participants to the Original KEIP were disclosed by name and title (ECF No. 281 ¶ 11). However, the Revised KEIP conceals the names and titles of three of the Newly Added KEIP Executives (e.g., Reply ¶ 11; Schaeffer Dec. ¶ 11). This redaction is not explained.

- Although the incremental funding of the Original KEIP Pool was disclosed (Original KEIP Motion ¶ 19), it is unjustifiably redacted in the Revised KEIP (Reply ¶ 14; Schaeffer Dec. ¶ 14). The redaction is even more puzzling inasmuch as the Debtors have not sought to redact the amount of the Revised KERP Pool (e.g., Reply ¶ 3).[3]

---

[3] The redaction in the Reply of the size of the Original KERP Pool (Reply ¶ 26) appears to be in error since it was disclosed both in the Original KERP Motion (ECF No. 282 ¶ 19) and elsewhere in the Modified KERP (Reply ¶ 27).

7

- The average cost per KEIP and KERP participant is redacted (Reply ¶¶ 25, 39; Schaeffer Dec. ¶ 26). Yet, the Debtors admit such information was readily available in 14 other cases with respect to KEIPs (Reply ¶ 25; Schaeffer Dec. ¶ 26) and 15 other cases with respect to KERPs (Reply ¶ 39; Schaeffer Dec. ¶ 36). Moreover, the average cost per KERP participant, although redacted in the Reply and body of the Schaeffer Declaration, is disclosed in an unredacted exhibit to the Schaeffer Declaration (Schaeffer Dec., Exh. 2). For these reasons, these individual cost redactions appear unwarranted.

- The baseline for Projected Cash Receipts (Reply ¶ 18; Schaeffer Dec. ¶ 18) appears to be directly related to a publicly-filed document, the DIP Budget (ECF No. 342). Its redaction, therefore, is unnecessary.

Although the Debtors assert that the redacted information is commercially sensitive and highly confidential and that disclosure would harm the Debtors' businesses and going concern value (ECF No. 441 ¶ 16), this assertion is unsupported and conclusory.[4] Nowhere does the Sealing Motion describe why the above information was disclosed in the Original Motion and yet redacted from the Revised Plans. Moreover, information such as the names of KEIP or KERP beneficiaries, the sizes of their proposed bonuses and similar information was disclosed in several of the KEIP or KERP motions upon which the Schaeffer Declaration relies for comparison (Schaeffer Dec., Exhs. 1-2). See, e.g., In re Longview Power, LLC, Case No. 13-12211 (BLS) (Bankr. D. Del.) (ECF No. 538) (executives identified by title; present salaries and bonus opportunities described); In re Velo Holding Inc., Case No. 12-11384 (MG) (Bankr. S.D.N.Y.) (see Velo, 472 B.R. at 205 (naming executives and bonus pool)); In re Borders Grp., Inc., Case No. 11-10614 (MG) (Bankr. S.D.N.Y.) (ECF No. 457) (executives and proposed bonuses identified); In re TerreStar Corp., Case No. 11- 10612 (SHL) (Bankr. S.D.N.Y.) (ECF No. 155) (executives and proposed bonus identified). In light of the Debtors'

---

[4] The Debtors have not filed an appropriate declaration to the effect that they have historically regarded employee compensation and bonus information as confidential. The United States Trustee is willing to consider such a declaration with respect to employees determined by the Court to be non-insiders.

lack of explanation and the fact that information they seek to redact is publicly available in other bonus motions upon which the Debtors rely, the Sealing Order should be vacated.

WHEREFORE, the United States Trustee respectfully requests that the Court vacate the Sealing Order, sustain this objection and grant such other and further relief as may be deemed just and proper.

Dated: New York, New York
September 23, 2015

                                 Respectfully submitted,

                                 WILLIAM K. HARRINGTON
                               UNITED STATES TRUSTEE

By:   */s/ Serene K. Nakano*
       SERENE K. NAKANO
       SUSAN D. GOLDEN
       Trial Attorneys
       U.S. Federal Office Building
       201 Varick St., Room 1006
       New York, New York 10014
       (212) 510-0500

**Attachment**

The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Relativity Fashion, LLC (4571); Relativity Holdings LLC (7052); Relativity Media, LLC (0844); Relativity REAL, LLC (1653); RML Distribution Domestic, LLC (6528); RML Distribution International, LLC (6749); RMLDD Financing, LLC (9114); 21 & Over Productions, LLC (7796); 3 Days to Kill Productions, LLC (5747); A Perfect Getaway P.R., LLC (9252); A Perfect Getaway, LLC (3939); Armored Car Productions, LLC (2750); Best of Me Productions, LLC (1490); Black Or White Films, LLC (6718); Blackbird Productions, LLC (8037); Brant Point Productions, LLC (9994); Brick Mansions Acquisitions, LLC (3910); Brilliant Films, LLC (0448); Brothers Productions, LLC (9930); Brothers Servicing, LLC (5849); Catfish Productions, LLC (7728); Cine Productions, LLC (8359); CinePost, LLC (8440); Cisco Beach Media, LLC (8621); Cliff Road Media, LLC (7065); Den of Thieves Films, LLC (3046); Don Jon Acquisitions, LLC (7951); DR Productions, LLC (7803); Einstein Rentals, LLC (5861); English Breakfast Media, LLC (2240); Furnace Films, LLC (3558); Gotti Acquisitions, LLC (6562); Great Point Productions, LLC (5813); Guido Contini Films, LLC (1031); Hooper Farm Music, LLC (3773); Hooper Farm Publishing, LLC (3762); Hummock Pond Properties, LLC (9862); Hunter Killer La Productions, LLC (1939); Hunter Killer Productions, LLC (3130); In The Hat Productions, LLC (3140); J & J Project, LLC (1832); JGAG Acquisitions, LLC (9221); Left Behind Acquisitions, LLC (1367); Long Pond Media, LLC (7197); Madaket Publishing, LLC (9356); Madaket Road Music, LLC (9352); Madvine RM, LLC (0646); Malavita Productions, LLC (8636); MB Productions, LLC (4477); Merchant of Shanghai Productions, LLC (7002); Miacomet Media LLC (7371); Miracle Shot Productions, LLC (0015); Most Wonderful Time Productions, LLC (0426); Movie Productions, LLC (9860); One Life Acquisitions, LLC (9061); Orange Street Media, LLC (3089); Out Of This World Productions, LLC (2322); Paranoia Acquisitions, LLC (8747); Phantom Acquisitions, LLC (6381); Pocomo Productions, LLC (1069); Relative Motion Music, LLC (8016); Relative Velocity Music, LLC (7169); Relativity Development, LLC (5296); Relativity Film Finance II, LLC (9082); Relativity Film Finance III, LLC (8893); Relativity Film Finance, LLC (2127); Relativity Films, LLC (5464); Relativity Foreign, LLC (8993); Relativity India Holdings, LLC (8921); Relativity Jackson, LLC (6116); Relativity Media Distribution, LLC (0264); Relativity Media Films, LLC (1574); Relativity Music Group, LLC (9540); Relativity Production LLC (7891); Relativity Rogue, LLC (3333); Relativity Senator, LLC (9044); Relativity Sky Land Asia Holdings, LLC (9582); Relativity TV, LLC (0227); Reveler Productions, LLC (2191); RML Acquisitions I, LLC (9406); RML Acquisitions II, LLC (9810); RML Acquisitions III, LLC (9116); RML Acquisitions IV, LLC (4997); RML Acquisitions IX, LLC (4410); RML Acquisitions V, LLC (9532); RML Acquisitions VI, LLC (9640); RML Acquisitions VII, LLC (7747); RML Acquisitions VIII, LLC (7459); RML Acquisitions X, LLC (1009); RML Acquisitions XI, LLC (2651); RML Acquisitions XII, LLC (4226); RML Acquisitions XIII, LLC (9614); RML Acquisitions XIV, LLC (1910); RML Acquisitions XV, LLC (5518); RML Bronze Films, LLC (8636); RML Damascus Films, LLC (6024); RML Desert Films, LLC (4564); RML Documentaries, LLC (7991); RML DR Films, LLC (0022); RML Echo Films, LLC (4656); RML Escobar Films LLC (0123); RML Film Development, LLC (3567); RML Films PR, LLC (1662); RML Hector Films, LLC (6054); RML Hillsong Films, LLC (3539); RML IFWT Films, LLC (1255); RML International Assets, LLC (1910); RML Jackson, LLC (1081); RML Kidnap Films, LLC (2708); RML Lazarus Films, LLC (0107); RML Nina Films, LLC (0495); RML November Films, LLC (9701); RML Oculus Films, LLC (2596); RML Our Father Films, LLC (6485); RML Romeo and Juliet Films, LLC (9509); RML Scripture Films, LLC (7845); RML Solace Films, LLC (5125); RML Somnia Films, LLC (7195); RML Timeless Productions, LLC (1996); RML Turkeys Films, LLC (8898); RML Very Good Girls Films, LLC (3685); RML WIB Films, LLC (0102); Rogue Digital, LLC (5578); Rogue Games, LLC (4812); Roguelife LLC (3442); Safe Haven Productions, LLC (6550); Sanctum Films, LLC (7736); Santa Claus Productions, LLC (7398); Smith Point Productions, LLC (9118); Snow White Productions, LLC (3175); Spy Next Door, LLC (3043); Story Development, LLC (0677); Straight Wharf Productions, LLC (5858); Strangers II, LLC (6152); Stretch Armstrong Productions, LLC (0213); Studio Merchandise, LLC (5738); Summer Forever Productions, LLC (9211); The Crow Productions, LLC (6707); Totally Interns, LLC (9980); Tribes of Palos Verdes Production, LLC (6638); Tuckernuck Music, LLC (8713); Tuckernuck Publishing, LLC (3960); Wright Girls Films, LLC (9639); Yuma, Inc. (1669); Zero Point Enterprises, LLC (9558). The location of the Debtors' corporate headquarters is: 9242 Beverly Blvd., Suite 300, Beverly Hills, CA 90210.