**Hearing Date and Time: November 10, 2015 at 11:00 a.m. (ET)**
**Objection Deadline: November 3, 2015 at 4:00 p.m. (ET)**

Craig A. Wolfe, Esq.
Malani J. Cademartori, Esq.
Blanka K. Wolfe, Esq.
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel:  (212) 653-8700
Fax: (212) 653-8701

- and -

Richard L. Wynne, Esq.
Bennett L. Spiegel, Esq.
Lori Sinanyan, Esq. (admitted *pro hac vice*)
**JONES DAY**
222 East 41st Street
New York, NY 10017
Tel:  (212) 326-3939
Fax: (212) 755-7306

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RELATIVITY FASHION, LLC, *et al.*,[1] | Case No. 15-11989 (MEW) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO
RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING THE SETTLEMENT AGREEMENT BETWEEN RELATIVITY
FOREIGN, LLC, INFILTRATOR FILMS LIMITED, AND BANK LEUMI (UK) PLC**

Relativity Fashion, LLC and its affiliated debtors and debtors in possession in these

chapter 11 cases (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**"), entry

---

[1] The Debtors in these chapter 11 cases are as set forth on page (i).

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Relativity Fashion, LLC (4571); Relativity Holdings LLC (7052); Relativity Media, LLC (0844); Relativity REAL, LLC (1653); RML Distribution Domestic, LLC (6528); RML Distribution International, LLC (6749); RMLDD Financing, LLC (9114); 21 & Over Productions, LLC (7796); 3 Days to Kill Productions, LLC (5747); A Perfect Getaway P.R., LLC (9252); A Perfect Getaway, LLC (3939); Armored Car Productions, LLC (2750); Best of Me Productions, LLC (1490); Black Or White Films, LLC (6718); Blackbird Productions, LLC (8037); Brant Point Productions, LLC (9994); Brick Mansions Acquisitions, LLC (3910); Brilliant Films, LLC (0448); Brothers Productions, LLC (9930); Brothers Servicing, LLC (5849); Catfish Productions, LLC (7728); Cine Productions, LLC (8359); CinePost, LLC (8440); Cisco Beach Media, LLC (8621); Cliff Road Media, LLC (7065); Den of Thieves Films, LLC (3046); Don Jon Acquisitions, LLC (7951); DR Productions, LLC (7803); Einstein Rentals, LLC (5861); English Breakfast Media, LLC (2240); Furnace Films, LLC (3558); Gotti Acquisitions, LLC (6562); Great Point Productions, LLC (5813); Guido Contini Films, LLC (1031); Hooper Farm Music, LLC (3773); Hooper Farm Publishing, LLC (3762); Hummock Pond Properties, LLC (9862); Hunter Killer La Productions, LLC (1939); Hunter Killer Productions, LLC (3130); In The Hat Productions, LLC (3140); J & J Project, LLC (1832); JGAG Acquisitions, LLC (9221); Left Behind Acquisitions, LLC (1367); Long Pond Media, LLC (7197); Madaket Publishing, LLC (9356); Madaket Road Music, LLC (9352); Madvine RM, LLC (0646); Malavita Productions, LLC (8636); MB Productions, LLC (4477); Merchant of Shanghai Productions, LLC (7002); Miacomet Media LLC (7371); Miracle Shot Productions, LLC (0015); Most Wonderful Time Productions, LLC (0426); Movie Productions, LLC (9860); One Life Acquisitions, LLC (9061); Orange Street Media, LLC (3089); Out Of This World Productions, LLC (2322); Paranoia Acquisitions, LLC (8747); Phantom Acquisitions, LLC (6381); Pocomo Productions, LLC (1069); Relative Motion Music, LLC (8016); Relative Velocity Music, LLC (7169); Relativity Development, LLC (5296); Relativity Film Finance II, LLC (9082); Relativity Film Finance III, LLC (8893); Relativity Film Finance, LLC (2127); Relativity Films, LLC (5464); Relativity Foreign, LLC (8993); Relativity India Holdings, LLC (8921); Relativity Jackson, LLC (6116); Relativity Media Distribution, LLC (0264); Relativity Media Films, LLC (1574); Relativity Music Group, LLC (9540); Relativity Production LLC (7891); Relativity Rogue, LLC (3333); Relativity Senator, LLC (9044); Relativity Sky Land Asia Holdings, LLC (9582); Relativity TV, LLC (0227); Reveler Productions, LLC (2191); RML Acquisitions I, LLC (9406); RML Acquisitions II, LLC (9810); RML Acquisitions III, LLC (9116); RML Acquisitions IV, LLC (4997); RML Acquisitions IX, LLC (4410); RML Acquisitions V, LLC (9532); RML Acquisitions VI, LLC (9640); RML Acquisitions VII, LLC (7747); RML Acquisitions VIII, LLC (7459); RML Acquisitions X, LLC (1009); RML Acquisitions XI, LLC (2651); RML Acquisitions XII, LLC (4226); RML Acquisitions XIII, LLC (9614); RML Acquisitions XIV, LLC (1910); RML Acquisitions XV, LLC (5518); RML Bronze Films, LLC (8636); RML Damascus Films, LLC (6024); RML Desert Films, LLC (4564); RML Documentaries, LLC (7991); RML DR Films, LLC (0022); RML Echo Films, LLC (4656); RML Escobar Films LLC (0123); RML Film Development, LLC (3567); RML Films PR, LLC (1662); RML Hector Films, LLC (6054); RML Hillsong Films, LLC (3539); RML IFWT Films, LLC (1255); RML International Assets, LLC (1910); RML Jackson, LLC (1081); RML Kidnap Films, LLC (2708); RML Lazarus Films, LLC (0107); RML Nina Films, LLC (0495); RML November Films, LLC (9701); RML Oculus Films, LLC (2596); RML Our Father Films, LLC (6485); RML Romeo and Juliet Films, LLC (9509); RML Scripture Films, LLC (7845); RML Solace Films, LLC (5125); RML Somnia Films, LLC (7195); RML Timeless Productions, LLC (1996); RML Turkeys Films, LLC (8898); RML Very Good Girls Films, LLC (3685); RML WIB Films, LLC (0102); Rogue Digital, LLC (5578); Rogue Games, LLC (4812); Roguelife LLC (3442); Safe Haven Productions, LLC (6550); Sanctum Films, LLC (7736); Santa Claus Productions, LLC (7398); Smith Point Productions, LLC (9118); Snow White Productions, LLC (3175); Spy Next Door, LLC (3043); Story Development, LLC (0677); Straight Wharf Productions, LLC (5858); Strangers II, LLC (6152); Stretch Armstrong Productions, LLC (0213); Studio Merchandise, LLC (5738); Summer Forever Productions, LLC (9211); The Crow Productions, LLC (6707); Totally Interns, LLC (9980); Tribes of Palos Verdes Production, LLC (6638); Tuckernuck Music, LLC (8713); Tuckernuck Publishing, LLC (3960); Wright Girls Films, LLC (9639); Yuma, Inc. (1669); Zero Point Enterprises, LLC (9558). The location of the Debtors' corporate headquarters is: 9242 Beverly Blvd., Suite 300, Beverly Hills, CA 90210.

of an order (the "**Proposed Order**") approving a settlement agreement (the "**Settlement Agreement**") between Relativity Foreign, LLC, Infiltrator Films Limited, and Bank Leumi (UK) PLC (collectively, the "**Parties**"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  A copy of the Proposed Order is attached hereto as Exhibit A and the copy of the Settlement Agreement is annexed to Exhibit A  as Exhibit 1.  In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The basis for the relief requested herein is Bankruptcy Rule 9019.

### Background

**A.      General Background**

3.      On July 30, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

4.      On August 7, 2015, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors [Dk. 114] (the "**Creditors' Committee**").

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for appointment of a trustee or examiner has been made in these chapter 11 cases.

6.      Additional factual background relating to the Debtors' businesses and the commencement of these chapter 11 cases is set forth in detail in the *Declaration of Dr. Brian G. Kushner Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New*

*York in Support of Chapter 11 Petitions and First Day Pleadings*, filed on July 30, 2015 [Dk. 14]

(the "**First Day Declaration**").

**B.      The Sales Agency Agreement**

7.      On October 10, 2014, Infiltrator Films Limited ("**Infiltrator Films**") and Relativity Foreign LLC ("**Relativity Foreign**") entered into a Sales Agency Agreement.[2] Pursuant to this Sales Agency Agreement, Relativity Foreign agreed to act as the foreign sales agent for a motion picture entitled *The Infiltrator* (the "**Picture**") and to receive certain commissions for its services.

8.      Pursuant to an undated Inter-Party Agreement with respect to the Picture (the "**IPA**"), by and among, Relativity Foreign, Bank Leumi (UK) PLC ("**Bank Leumi**"), Good Film Productions Limited, Lip Sync Productions LLP, Infiltrator Productions Limited, Good Film Productions US, Inc. and Film Finances, Inc., Relativity Foreign ratified its obligations with respect to the Picture under the Sales Agency Agreement.

9.      Pursuant to a Collection Account Management Agreement dated March 2, 2015, and amended on June 11, 2015 (the "**CAMA**"), by and among Relativity Foreign, Infiltrator Films, Bank Leumi, Freeway CAM, B.V., Stichting Freeway Custody, Good Film Productions Limited, Lip Sync Productions LLP, Infiltrator Productions Limited, Good Film Productions US, Inc., Screen Actors Guild/American Federation of Television and Directors Guild of America, Inc., the parties agreed on certain procedures and priorities with regard to payment of revenues derived from the Picture.

---

[2] The following summary is qualified in its entirety by reference to the provisions of the Settlement Agreement. In the event of any inconsistencies between the provisions of the Settlement Agreement and the terms set forth herein, the terms of the Settlement Agreement will govern. Capitalized terms used in this summary and not otherwise defined herein have the meanings given to them in the Settlement Agreement.

- 4 -

10.    Pursuant to an undated Lab Pledgeholder Agreement (the "**Lab Agreement**") by and among Relativity Foreign, Infiltrator Films, Bank Leumi, Good Film Productions Limited, Lip Sync Productions LLP, Lip Sync Post Limited, Infiltrator Productions Limited, and Film Finances, Inc., the parties agreed to regulate certain rights and obligations in connection with certain materials held by the film laboratory for the Picture.

11.    As set forth in the First Day Declaration, prior to the Petition Date, the Debtors experienced severe liquidity constraints and increasing limitations imposed by the certain forbearance agreements and debt issuances.  As a result of these liquidity constraints, Relativity Foreign was unable to perform its duties under the Sales Agency Agreement.

12.    Prior to the Petition Date and by a letter dated July 15, 2015, addressed to Relativity Foreign, Infiltrator Films terminated the Sales Agency Agreement.  Relativity Foreign acknowledges and agrees that such termination was valid and effective (the "**Termination**") on such date.

**C.    The Settlement Agreement**

13.    Following Termination, the Parties engaged in negotiations regarding: (a) the amount of commissions that Relativity Foreign contends are due for sales made prior to Termination, and (b) damages that Infiltrator Films contends it has suffered or may suffer as a result of Termination or the alleged events leading to the Termination of the Sales Agency Agreement.

14.    On September 23, 2015, the Parties entered into the Settlement Agreement, effective as of July 15, 2015, confirming the Termination and resolving any disputes under the

Sales Agency Agreement, as well as to formalize Relativity Foreign's withdrawal as a party to the IPA, CAMA and Lab Agreement by virtue of the Termination.[3]

15.     Pursuant to the Settlement Agreement, the Parties have agreed, among other things, to the following terms:

- Relativity Foreign will receive $138,000 for its services as sales agent for the Picture.

- Relativity Foreign will receive a release from Infiltrator Films, Bank Leumi and each of the other parties to the various agreements in connection with the Sales Agency Agreement (the "**Infiltrator Parties**") and, in turn, Relativity Foreign has agreed to release each of the Infiltrator Parties from, any and all liabilities, claims, actions or causes of action related to or arising under the Sales Agency Agreement and any related agreements upon consummation of the Settlement Agreement.

16.     The Debtors have consulted with the lenders under the Debtors' post-petition financing facility and with the Creditors' Committee regarding the relief sought in this Motion.

## Relief Requested

17.     By this Motion, the Debtors seek entry of an order pursuant to Bankruptcy Rule 9019 authorizing the Debtors to effectuate the Settlement Agreement.

## Basis for Relief

**A.     Entry Into the Settlement Agreement Is Supported By the Debtors' Business Judgment, Is Well Within the Range of Reasonableness and Should Be Approved**

18.     Pursuant to Bankruptcy Rule 9019, bankruptcy courts can approve a compromise or settlement if it is in the best interests of the estate. *See Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). The settlement need not result in the best possible outcome for the debtor, but must not

---

[3] Although all of the counterparties to the IPA, CAMA and Lab Agreement are not signatories to the Settlement Agreement, those counterparties support the Settlement Agreement in order to clarify the status of Relativty Foreign under the IPA, CAMA and Lab Agreement.

"fall below the lowest point in the range of reasonableness." *Id.* The decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 121-122 (S.D.N.Y. 1994); *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (noting that a bankruptcy court may exercise its discretion "in light of the general public policy favoring settlements"); 10 COLLIER ON BANKRUPTCY ¶ 9019.02 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010).

19.     In exercising its discretion, the bankruptcy court must make an independent determination that the settlement is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Shugrue*, 165 B.R. at 122. That does not mean that the bankruptcy court should substitute its judgment for the debtor's judgment. *In re CarlaLeather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984). Instead, a bankruptcy court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). Stated differently, the court does not need to conduct a "mini-trial" of the facts and merits underlying the dispute; it only needs to be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment about the settlement. *See In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).

20.     To evaluate whether a settlement is fair and equitable, courts in the Second Circuit consider factors including:

- the balance between possibility of success in any litigation and the settlement's future benefits;

- the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay;

- the paramount interests of the creditors, including the relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

- whether other parties in interest support the settlement;

- the competency and experience of counsel supporting the settlement; and

- the extent to which the settlement is the product of arm's-length bargaining.

*See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993).

21.     As discussed below, consideration of the above factors supports Court approval of the Settlement Agreement under Rule 9019.  First, in entering into the Settlement Agreement, the Debtors have carefully considered the benefit to the bankruptcy estates and weighed those benefits against a potential adverse decision for damages based on any contract dispute by Infiltrator Films, Bank Leumi, or any other parties.  Second, the Debtors determined in their business judgment that it would be most effective and value-maximizing to avoid the cost, risk and distraction that would be caused by defending any such actions.

22.     The terms of the Settlement Agreement guarantee a benefit for the Debtors' estates instead of burdening the estates with the possible costs of litigation or claims adjudication.  Specifically, resolution of the Settlement Agreement will result in a cash infusion to the Debtors' estates in the aggregate amount of $138,000.  Further, pursuant to the Settlement Agreement, Infiltrator Films and Bank Leumi have agreed to waive all claims against the Debtors' estates.  If the Debtors did not enter into these Settlement Agreement, Infiltrator Films (and Bank Leumi) may assert significant damage claims against the estate that could result in administrative costs to the estate and would increase the size of the unsecured creditor pool without any corresponding benefit to the estates.

23.    Finally, the Settlement Agreement is the result of extensive, good faith negotiations among the Parties, each of which is represented by experienced and skilled counsel.

24.    The Debtors submit that, in light of all of the above, entry into the Settlement Agreement is within their sound business judgment, is in the best interest of their estates and creditors, and is consistent with their fiduciary duties to maximize value for their estates and creditors.

### Debtors' Reservation of Rights

25.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim or allegation, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

### Notice

26.    No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the counsel to the Creditors' Committee; (c) counsel to the agent (and if there is no agent, counsel to the lender(s)) under each of the Debtors' pre-petition financing facilities; (d) counsel to the agent under the Debtors' post-petition financing facility; (e) the United States Securities and Exchange Commission; (f) the Internal Revenue Service, and (g) all parties entitled to notice pursuant to Local Rule 9013-1(b).  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

### No Prior Request

27.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter an order, substantially in the form annexed hereto as Exhibit A, authorizing the Debtors to enter into the Settlement Agreement, annexed as Exhibit 1 to Exhibit A and (b) grant such other and further relief as may be just and appropriate.

Dated: October 20, 2015
New York, New York

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

By: */s/ Malani J. Cademartori*
Craig A. Wolfe, Esq.
Malani J. Cademartori, Esq.
Blanka K. Wolfe, Esq.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 653-8700
Fax: (212) 653-8701
E-mail: cwolfe@sheppardmullin.com
        mcademartori@sheppardmullin.com
        bwolfe@sheppardmullin.com

-and-

**JONES DAY**
Richard L. Wynne, Esq.
Bennett L. Spiegel, Esq.
Lori Sinanyan, Esq. (admitted *pro hac vice*)
222 East 41st Street
New York, NY 10017
Tel:  (212) 326-3939
Fax: (212) 755-7306
E-mail: rlwynne@jonesday.com
        blspiegel@jonesday.com
        lsinanyan@jonesday.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RELATIVITY FASHION, LLC, *et al.*,[1] | Case No. 15-11989 (MEW) |
| Debtors. | (Jointly Administered) |

### ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING THE SETTLEMENT AGREEMENT BETWEEN RELATIVITY FOREIGN, LLC, INFILTRATOR FILMS LIMITED, AND BANK LEUMI (UK) PLC

Upon the motion (the "**Motion**")[2] of Relativity Fashion, LLC, and its affiliated debtors and debtors in possession in these chapter 11 cases (collectively, the "**Debtors**"), for entry of an order, pursuant to Rule 9019 of the Bankruptcy Rules, approving the Settlement Agreement between Relativity Foreign, LLC, Infiltrator Films Limited, And Bank Leumi (UK) PLC; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that, except as otherwise ordered herein, no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

---

[1] The Debtors in these chapter 11 cases are as set forth on page (i).

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

- 1 -

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Relativity Fashion, LLC (4571); Relativity Holdings LLC (7052); Relativity Media, LLC (0844); Relativity REAL, LLC (1653); RML Distribution Domestic, LLC (6528); RML Distribution International, LLC (6749); RMLDD Financing, LLC (9114); 21 & Over Productions, LLC (7796); 3 Days to Kill Productions, LLC (5747); A Perfect Getaway P.R., LLC (9252); A Perfect Getaway, LLC (3939); Armored Car Productions, LLC (2750); Best of Me Productions, LLC (1490); Black Or White Films, LLC (6718); Blackbird Productions, LLC (8037); Brant Point Productions, LLC (9994); Brick Mansions Acquisitions, LLC (3910); Brilliant Films, LLC (0448); Brothers Productions, LLC (9930); Brothers Servicing, LLC (5849); Catfish Productions, LLC (7728); Cine Productions, LLC (8359); CinePost, LLC (8440); Cisco Beach Media, LLC (8621); Cliff Road Media, LLC (7065); Den of Thieves Films, LLC (3046); Don Jon Acquisitions, LLC (7951); DR Productions, LLC (7803); Einstein Rentals, LLC (5861); English Breakfast Media, LLC (2240); Furnace Films, LLC (3558); Gotti Acquisitions, LLC (6562); Great Point Productions, LLC (5813); Guido Contini Films, LLC (1031); Hooper Farm Music, LLC (3773); Hooper Farm Publishing, LLC (3762); Hummock Pond Properties, LLC (9862); Hunter Killer La Productions, LLC (1939); Hunter Killer Productions, LLC (3130); In The Hat Productions, LLC (3140); J & J Project, LLC (1832); JGAG Acquisitions, LLC (9221); Left Behind Acquisitions, LLC (1367); Long Pond Media, LLC (7197); Madaket Publishing, LLC (9356); Madaket Road Music, LLC (9352); Madvine RM, LLC (0646); Malavita Productions, LLC (8636); MB Productions, LLC (4477); Merchant of Shanghai Productions, LLC (7002); Miacomet Media LLC (7371); Miracle Shot Productions, LLC (0015); Most Wonderful Time Productions, LLC (0426); Movie Productions, LLC (9860); One Life Acquisitions, LLC (9061); Orange Street Media, LLC (3089); Out Of This World Productions, LLC (2322); Paranoia Acquisitions, LLC (8747); Phantom Acquisitions, LLC (6381); Pocomo Productions, LLC (1069); Relative Motion Music, LLC (8016); Relative Velocity Music, LLC (7169); Relativity Development, LLC (5296); Relativity Film Finance II, LLC (9082); Relativity Film Finance III, LLC (8893); Relativity Film Finance, LLC (2127); Relativity Films, LLC (5464); Relativity Foreign, LLC (8993); Relativity India Holdings, LLC (8921); Relativity Jackson, LLC (6116); Relativity Media Distribution, LLC (0264); Relativity Media Films, LLC (1574); Relativity Music Group, LLC (9540); Relativity Production LLC (7891); Relativity Rogue, LLC (3333); Relativity Senator, LLC (9044); Relativity Sky Land Asia Holdings, LLC (9582); Relativity TV, LLC (0227); Reveler Productions, LLC (2191); RML Acquisitions I, LLC (9406); RML Acquisitions II, LLC (9810); RML Acquisitions III, LLC (9116); RML Acquisitions IV, LLC (4997); RML Acquisitions IX, LLC (4410); RML Acquisitions V, LLC (9532); RML Acquisitions VI, LLC (9640); RML Acquisitions VII, LLC (7747); RML Acquisitions VIII, LLC (7459); RML Acquisitions X, LLC (1009); RML Acquisitions XI, LLC (2651); RML Acquisitions XII, LLC (4226); RML Acquisitions XIII, LLC (9614); RML Acquisitions XIV, LLC (1910); RML Acquisitions XV, LLC (5518); RML Bronze Films, LLC (8636); RML Damascus Films, LLC (6024); RML Desert Films, LLC (4564); RML Documentaries, LLC (7991); RML DR Films, LLC (0022); RML Echo Films, LLC (4656); RML Escobar Films LLC (0123); RML Film Development, LLC (3567); RML Films PR, LLC (1662); RML Hector Films, LLC (6054); RML Hillsong Films, LLC (3539); RML IFWT Films, LLC (1255); RML International Assets, LLC (1910); RML Jackson, LLC (1081); RML Kidnap Films, LLC (2708); RML Lazarus Films, LLC (0107); RML Nina Films, LLC (0495); RML November Films, LLC (9701); RML Oculus Films, LLC (2596); RML Our Father Films, LLC (6485); RML Romeo and Juliet Films, LLC (9509); RML Scripture Films, LLC (7845); RML Solace Films, LLC (5125); RML Somnia Films, LLC (7195); RML Timeless Productions, LLC (1996); RML Turkeys Films, LLC (8898); RML Very Good Girls Films, LLC (3685); RML WIB Films, LLC (0102); Rogue Digital, LLC (5578); Rogue Games, LLC (4812); Roguelife LLC (3442); Safe Haven Productions, LLC (6550); Sanctum Films, LLC (7736); Santa Claus Productions, LLC (7398); Smith Point Productions, LLC (9118); Snow White Productions, LLC (3175); Spy Next Door, LLC (3043); Story Development, LLC (0677); Straight Wharf Productions, LLC (5858); Strangers II, LLC (6152); Stretch Armstrong Productions, LLC (0213); Studio Merchandise, LLC (5738); Summer Forever Productions, LLC (9211); The Crow Productions, LLC (6707); Totally Interns, LLC (9980); Tribes of Palos Verdes Production, LLC (6638); Tuckernuck Music, LLC (8713); Tuckernuck Publishing, LLC (3960); Wright Girls Films, LLC (9639); Yuma, Inc. (1669); Zero Point Enterprises, LLC (9558). The location of the Debtors' corporate headquarters is: 9242 Beverly Blvd., Suite 300, Beverly Hills, CA 90210.

i

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted to the extent set forth herein.

2.    Pursuant to Bankruptcy Rule 9019, the Settlement Agreement is approved.

3.    The Debtors are authorized to enter into the Settlement Agreement, annexed hereto as <u>Exhibit 1</u>, and to perform under the terms of the Settlement Agreement.

4.    The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate on behalf of the Debtors' estates to implement and effectuate the Settlement Agreement contemplated by this Order.

5.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: New York, New York
     November __, 2015

                                           _____
                                           THE HONORABLE MICHAEL E. WILES
                                           UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Settlement Agreement**

**Agreement Regarding Resignation of Sales Agent and
Termination of Sales Agency Agreement (Infiltrator)**

This Agreement Regarding Resignation of Sales Agent and Termination of Sales Agency Agreement (the "Agreement") dated as of July 15, 2015 by and between INFILTRATOR FILMS LIMITED ("Producer"), BANK LEUMI (UK) PLC (the "Bank") and RELATIVITY FOREIGN, LLC, a California limited liability company ("Sales Agent", and together with Producer and the Bank, to be referred to herein as the "Parties") in connection with the motion picture produced by Producer presently entitled *The Infiltrator* (the "Picture").

1.    FACTUAL BACKGROUND.

1.1.    Pursuant to that certain Sales Agency Agreement, dated as of October 10, 2014, between the Producer and the Sales Agent, as modified, supplemented and amended from time to time, Sales Agent agreed to act as the sales agent for the Picture and to receive certain commissions for such services.

1.2.    Pursuant to the certain undated Inter-Party Agreement with respect to the Picture (the "IPA"), by and among Producer, Sales Agent, the Bank, Good Film Productions Limited, Lip Sync Productions LLP, Infiltrator Productions Limited, Good Film Productions US, Inc. and Film Finances, Inc., the Sales Agent agreed to perform certain obligations with respect to the Picture.

1.3.    Pursuant to that certain Collection Account Management agreement dated as of March 2, 2015 (as amended by an amendment agreement dated 11 June 2015 with effect from 8 May 2015) (the "CAMA") by and among Freeway CAM, B.V., Stichting Freeway Custody, the Bank, Good Film Productions Limited, Lip Sync Productions LLP, Producer, Infiltrator Productions Limited, Good Film Productions US, Inc., Sales Agent, Screen Actors Guild/American Federation of Television and Directors Guild of America, Inc. the parties agreed on certain procedures and priorities with regard to payment of revenues derived from the Picture.

1.4.    Pursuant to that certain undated Lab Pledgeholder Agreement (the "Lab Agreement") by and among the Bank, Good Film Productions Limited, Lip Sync Productions LLP, Lip Sync Post Limited, Producer, Infiltrator Productions Limited, Sales Agent, and Film Finances, Inc., the parties agreed to regulate certain rights and obligations in connection with certain materials held by the film laboratory for the Picture.

1.5.    By a letter to Sales Agent dated July 15, 2015, Producer terminated the Sales Agency Agreement, and Sales Agent acknowledges and agrees that such termination was valid and effective (the "Termination").

1.6.    By this Agreement the Parties desire to ratify and confirm the Termination of the Sales Agency Agreement and to specify the post termination rights and obligations of the parties, including without limitation, the withdrawal of Sales Agent as a party from the IPA, the CAMA and the Lab Agreement.

1.7.    Sales Agent is now a debtor and debtor-in-possession in the jointly administratively chapter 11 proceedings styled *In re Relativity Fashion, LLC, et al.* – Case No. 15-11989 (MEW) (Jointly Administered) (the "Bankruptcy Proceeding") commenced by the filing of voluntary chapter 11 petitions by Sales Agent and each of its 144 affiliates debtors in the United States Court for the Southern District of New York (the "Bankruptcy Court") on July 30, 2015.

1.8.    Following Termination, the Parties engaged in negotiations regarding: (a) the amount of commissions that Sales Agent contends are due for sales made prior to termination, and (b) damages Producer contends it has suffered as a result of the breaches giving rise to termination of the Sales Agency Agreement;

1.9.    As a result of Termination, the Sales Agency Agreement is not capable of assumption, assumption and assignment, or rejection in the Bankruptcy Proceedings. Because Sales Agent's rights and obligations under the IPA, the CAMA and the Lab Agreement are inextricably intertwined with its status as Sales Agent under the Sales Agency Agreement, the counterparties to those agreements desire clarity as to Sales Agent's status thereunder.

1.10.    Sales Agent and Producer have entered into this Agreement to confirm that the Sales Agency Agreement was effectively and irrevocably terminated prior to the filing of the Bankruptcy Proceeding, to resolve their dispute regarding payment of any remaining amounts due under, or for alleged breach of the Sales Agency Agreement, and to agree that Sales Agent has withdrawn as a party to the IPA, CAMA and Lab Agreement by virtue of the Termination.

2.    CONDITIONS PRECEDENT. The effectiveness of this Agreement is conditional upon the following (the "Conditions Precedent"): (a) full execution of this Agreement by all Parties; (b) entry of a final order by the Bankruptcy Court (the "Approval Order") approving this Agreement, ratifying the pre-petition Termination of the Sales Agency Agreement, and simultaneous withdrawal of the Sales Agent as a party to the IPA, CAMA and Lab Agreement; (c) execution by the applicable parties of the amendments to the IPA, CAMA and Lab Agreement attached hereto as Exhibits "A", "B" and "C" confirming Sales Agent's withdrawal as a party to those agreements and (d) Sales Agent's delivery of the notices to distributors as required below in the form of Exhibit "E". In connection with the foregoing, the Parties acknowledge that it is urgent to have the Conditions Precedent satisfied as quickly as possible to enable a new sales agent for the Picture to be appointed and to sell the Picture at the Toronto Film Festival in September and the American Film Market in October.

2.    AGREEMENTS. The Parties agree that the Sales Agency Agreement was terminated effective as of July 15, 2015. For the avoidance of doubt and to effectuate the foregoing, the Sales Agent hereby resigns as the Sales Agent, effective as of July 15, 2015.

Sales Agent will promptly file a motion in the Bankruptcy Proceeding seeking Bankruptcy Court approval of this Agreement. Upon satisfaction of the Conditions Precedent, the parties further agree as follows:

3.1.    Producer will pay Sales Agent the sum of $138,000 (the "Settlement Amount"). Sales Agent will have no further right to any payment in connection with the Picture as commission, expenses or otherwise. Sales Agent will have no further rights with respect to any

-2-

sequel or other subsequent production based on the Picture. Sales Agent will be accorded no credit in connection with the Picture. There will be no further limitations on Producer's right to screen the Picture at festivals or otherwise. Sales Agent will not hereafter hold itself out as being the sales agent for the Picture or as otherwise being connected in any way with the Picture and will not issue any publicity or make or authorize any public statement of any kind in which any reference is made to Producer or the Picture or other persons or companies involved with the Picture without the prior written approval of Producer in each instance.

3.2    Sales Agent shall have no further obligation to service any of the Distribution Agreements or pending sales made pursuant to the Sales Agency Agreement. As noted above, as a Condition Precedent to Producer's obligations hereunder, Sales Agent will notify all distributors with which it has had dealings in connection with the Picture by a notice in the form of Exhibit "E" hereto that it is no longer the sales agent for the Picture and that all future dealing should be with Producer or Producer's designee. If Sales Agent receives any inquiries regarding the Picture, they will be immediately referred to Producer or to Producer's designee.

3.3    Neither Producer nor the Bank, or any other parties to any of the IPA, CAMA or Lab Agreement, will have any right to assert any claims or bring any causes of action against Sales Agent or any of its affiliated debtors in the Bankruptcy Proceedings under any of the Sales Agency Agreement, IPA, CAMA or Lab Agreement, or any other agreements related to the Picture or otherwise with respect to the subject matter hereof and acknowledges and agrees that it is bound by the automatic stay under section 362 of title 11 of the United States Code (and shall be bound by any injunction included in any plan confirmed in the Bankruptcy Proceedings) from taking any action against Sales Agent or any of its affiliated debtors in connection with any claims or other causes of action it may have under any of the Sales Agency Agreement, IPA, CAMA or Lab Agreement, or any other agreements related to the Picture or otherwise with respect to the subject matter hereof.

3.4    Sales Agent will promptly deliver to Producer all originals and copies of all teasers, publicity materials, artwork, graphics, scripts and other creative or marketing materials in Sales Agent's possession or control relating to the Picture (the "Creative Materials"). Sales Agent acknowledges that the Creative Materials are and have at all times been the sole property of Producer, and Sales Agent warrants that the Creative Materials will be delivered to Producer free and clear of any and all liens, claims, encumbrances or obligations of any kind. Without limiting the generality of the foregoing, Sales Agent assigns any and all rights which it may have in the Creative Materials to Producer. In addition, Sales Agent will promptly deliver to Producer copies of all financial records and agreements relating to the Picture, and will provide Producer with all information that Producer may request regarding its sales efforts prior to termination.

3.5    Sales Agent represents and warrants that, except for the Sales Agency Agreement, the IPA, the CAMA, the Lab Agreement and the distribution agreements listed in Exhibit "D" hereto (the "Distribution Agreements"), it has not entered into any agreements or undertaken any obligations in connection in the Picture that are binding on Producer or any of the other parties to the IPA, CAMA and Lab Agreement, that it has not entered into any distribution agreements for the Picture other than the Distribution Agreements listed on Exhibit D, that the copies of the Distribution Agreements heretofore provided by Sales Agent to Producer are true and complete copies of the Distribution Agreements, that all of the Distribution Agreements are in full

force and effect, that no party is in breach of any the Distribution Agreements and that all obligations of any party to be performed pursuant to the Distribution Agreements prior to the date hereof have been fully performed. Sales Agent represents and warrants that it has not received any payment of any kind from any distributor in connection with the Picture except for payments that have been processed through the collection account pursuant to the CAMA. Sales Agent confirms there are no pending sales of the Picture. Sales Agent hereby irrevocably assigns to Producer any rights that it may have pursuant to the Distribution Agreements, and Producer hereby assumes any executory obligations that Sales Agent may have thereunder.

3.6    Sales Agent hereby agrees that it has withdrawn as a party to the IPA, the CAMA and Lab Agreement.

3.7    If, notwithstanding the termination of the Sales Agency Agreement and Sales Agent's withdrawal from the IPA, CAMA and Lab Agreement and assignment of the Distribution Agreements to Producer, Sales Agent hereafter receives any payment pertaining to the Picture, whether in the form of a minimum guarantee, a share of revenues, a payment of commissions or expenses, a refund or rebate or any other payment of any kind or nature, the Sales Agent will hold the same in trust for Producer, will promptly notify Producer of its receipt of the same and will promptly make payment of the same to Producer or Producer's designee.

## 4.    MISCELLANEOUS.

4.1    In consideration of the foregoing, and except for payment of the Settlement Amount as provided for above, the Producer and the Bank, on the one hand, and Sales Agent, on the other, hereby mutually release and discharge each other, including each other's heirs, representatives, and assigns and including each other's affiliated companies, and the partners, directors, shareholders, officers, attorneys, agents, representatives, and employees of each of the above, from any and all claims, demands, actions, causes of action, liabilities, obligations, losses, damages, costs and expenses, including reasonable outside attorneys' fees and costs, of whatever kind or nature, which they now own or hold or have at any time heretofore owned or held against each other resulting from any act or omission by or on behalf of any party committed or omitted prior to the date hereof known or unknown with respect to the Picture (collectively referred to herein as "Claim(s)"), and in connection with the foregoing they hereby waive the provisions of California Civil Code Section 1542, it being their intention to release all claims even if circumstances turn out to be different than those presently known.

4.2.    Each of the Producer and the Bank, on the one hand, and the Sales Agent, on the other, agree to forever refrain and forbear from commencing, instituting or prosecuting any lawsuit, action or other proceeding against the other(s), or such other party's heirs, successors, assigns, representatives and related parties, based on, arising out of, or in connection with any Claim that is released and discharged by reason of this Agreement. Each Party warrants that such Party has not heretofore assigned or transferred to any third party all or any portion of any matters or potential Claims released hereunder. In the event of any dispute relating to the Picture, Sales Agent expressly waives any right to an injunction or other equitable relief or any other remedy which would or might hamper, impede or interfere in any way with the exploitation of the Picture or any element thereof or right therein.

4.3.    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. A signed and delivered facsimile copy of this Agreement, or a signed copy transmitted electronically in either a tagged image format file (TIFF) or a portable document format (PDF), shall be binding on the party signing the facsimile or electronically transmitted copy, and such copy shall have the same effect as the original. Any Party who delivers such a signature page agrees to later deliver an original counterpart to any party which requests it.

4.4.    This Agreement and the rights and obligations of the Parties hereto shall be governed by, construed and enforced in accordance with the internal laws of the State of California without reference to the conflicts of laws principles thereof.

4.5.    This Agreement shall not become effective unless and until it is signed by each of the Parties hereto.

   **IN WITNESS WHEREOF**, the Parties hereto have caused this instrument to be executed as of the day and year first above written.

INFILTRATOR FILMS LIMITED
("Producer")

By: _____

Its: _____
          (Authorized Signatory)

RELATIVITY FOREIGN, LLC,
a California limited liability company
("Sales Agent")

By: _____

Its: _Deputy CRO_____
          (Authorized Signatory)

BANK LEUMI (UK) PLC
("Bank")

By: _____

Its: ___AVP_____
          (Authorized Signatory)

4.3.    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.  A signed and delivered facsimile copy of this Agreement, or a signed copy transmitted electronically in either a tagged image format file (TIFF) or a portable document format (PDF), shall be binding on the party signing the facsimile or electronically transmitted copy, and such copy shall have the same effect as the original.  Any Party who delivers such a signature page agrees to later deliver an original counterpart to any party which requests it.

4.4.    This Agreement and the rights and obligations of the Parties hereto shall be governed by, construed and enforced in accordance with the internal laws of the State of California without reference to the conflicts of laws principles thereof.

4.5.    This Agreement shall not become effective unless and until it is signed by each of the Parties hereto.

**IN WITNESS WHEREOF**, the Parties hereto have caused this instrument to be executed as of the day and year first above written.

INFILTRATOR FILMS LIMITED                    RELATIVITY FOREIGN, LLC,
("Producer")                                 a California limited liability company
                                             ("Sales Agent")

By: _____                  By: _____

Its: _____                 Its: _____
    (Authorized Signatory)                        (Authorized Signatory)


BANK LEUMI (UK) PLC
("Bank")


By: _____

Its: _____
    (Authorized Signatory)

## EXHIBIT "A"

### WITHDRAWAL OF SALES AGENT FROM INTERPARTY AGREEMENT

Reference is made to that certain undated fully executed Interparty Agreement (the "IPA") relating the film provisionally entitled "The Infiltrator" (the "Picture") among Bank Leumi (UK) plc ("Bank"), Good Film Productions Limited, Lip Sync Productions LLP, Infiltrator Films Limited ("Producer"), Infiltrator Productions Limited, Good Film Productions US, Inc., Relativity Foreign LLC ("Sales Agent"), and Film Finances, Inc. The parties to the IPA hereby agree to amend the IPA effective as of July 15, 2015 (the "Effective Date")

WHEREAS, Sales Agent has been terminated as the sales agent for the Picture; and

WHEREAS, the parties desire to amend the IPA to reflect the termination of the Sales Agent.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.      As of the Effective Date, the Sales Agent will no longer be a party to the IPA and will have no further rights or obligations pursuant to the IPA. Producer will enter into an agreement with a replacement Sales Agent in consultation with the Bank, and the parties will thereafter amend the IPA to add the new sales agent as a party in substitution for Sales Agent.

2.      Sales Agent represents and warrants that Sales Agent is free to enter into this Agreement and to withdraw from the IPA as provided herein, and Sales Agent is not subject to any obligation or disability which will or is likely to affect the foregoing.

3.      The consequences of Sales Agent's termination shall be as set forth in the Agreement re Resignation of Sales Agent and Termination of Sales Agency Agreement dated as of July 15, 2015 that is being entered into concurrently herewith, including without limitation, Section 3.3 thereof, and the provisions of such agreement will supersede the provisions regarding consequences of termination in paragraph 8.14 of the IPA.

3.    Except as hereby amended the IPA will remain unchanged and in full force and effect.

AGREED:

| | |
|---|---|
| Bank Leumi (UK) plc | Good Film Productions Limited |
| By_____ | By_____ |
| Title_____ | Title_____ |
| Lip Sync Productions LLP, | Infiltrator Films Limited |
| By_____ | By_____ |
| Title_____ | Title_____ |
| Infiltrator Productions Limited | Good Film Productions US, Inc. |
| By_____ | By_____ |
| Title_____ | Title_____ |
| Relativity Foreign LLC | Film Finances, Inc. |
| By _Illegible Signature_ | By_____ |
| Title _Dep CRO_ | Title_____ |

3.    Except as hereby amended the IPA will remain unchanged and in full force and effect.

AGREED:

Bank Leumi (UK) plc

By _____

Title _____

Lip Sync Productions LLP,

By _____

Title _____

Infiltrator Productions Limited

By _____

Title _____

Relativity Foreign LLC

By _____

Title _____

Good Film Productions Limited

By _____

Title _____

Infiltrator Films Limited

By _____

Title _____

Good Film Productions US, Inc.

By _____

Title _____

Film Finances, Inc.

By _____

Title _____

## EXHIBIT "B"

### WITHDRAWAL OF SALES AGENT FROM CAMA

Reference is made to that certain Collection Account Management Agreement (the "CAMA") relating the film provisionally entitled "The Infiltrator" (the "Picture") among Freeway CAM, B.V., Stichting Freeway Custody, Bank Leumi (UK) plc ("Bank"), Good Film Productions Limited, Lip Sync Productions LLP, Infiltrator Films Limited ("Producer"), Infiltrator Productions Limited, Good Film Productions US, Inc., Relativity Foreign LLC ("Sales Agent"), Screen Actors Guild/American Federation of Television and Radio Artists, Directors Guild of America, Inc. and Film Finances, Inc. The parties to the CAMA hereby agree to amend the CAMA effective as of July 15, 2015 (the "Effective Date")

WHEREAS, Sales Agent has been terminated as the sales agent for the Picture; and

WHEREAS, the parties desire to amend the CAMA to reflect the termination of the Sales Agent.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.      As of the Effective Date, the Sales Agent will no longer be a party to the CAMA and will have no further right to be paid any amount of money pursuant to the CAMA and no other further rights or obligations of any kind pursuant to the CAMA. Producer will enter into an agreement with a replacement Sales Agent in consultation with the Bank, and the parties will thereafter amend the CAMA to add the new sales agent as a party in substitution for Sales Agent.

2.      Sales Agent represents and warrants that Sales Agent is free to enter into this Agreement and to withdraw from the CAMA as provided herein, and Sales Agent is not subject to any obligation or disability which will or is likely to affect the foregoing.

3.      The consequences of Sales Agent's termination shall be as set forth in the Agreement re Resignation of Sales Agent and Termination of Sales Agency Agreement dated as of July 15, 2015, that is being entered into concurrently herewith, including without limitation, Section 3.3 thereof.

4.    Except as hereby amended the CAMA will remain unchanged and in full force and effect.

AGREED:

Freeway CAM, B.V.                              Stichting Freeway Custody

By_____                       By_____

Title_____                      Title_____

Bank Leumi (UK) plc                            Good Film Productions Limited

By_____                       By_____

Title_____                      Title_____

Lip Sync Productions LLP,                       Infiltrator Films Limited

By_____                       By_____

Title_____                      Title_____

Infiltrator Productions Limited                 Good Film Productions US, Inc.

By_____                       By_____

Title_____                      Title_____

Relativity Foreign LLC                          Film Finances, Inc.

By _~~~~~~~~~~~~~~~              By_____

Title _Dan CRO_____                            Title_____

4.    Except as hereby amended the CAMA will remain unchanged and in full force and effect.

AGREED:

Freeway CAM, B.V.                        Stichting Freeway Custody

By_____              By_____

Title_____            Title_____

Bank Leumi (UK) plc                      Good Film Productions Limited

By_____              By [signature]

Title_____            Title Managing Director

Lip Sync Productions LLP,                 Infiltrator Films Limited

By_____              By [signature]

Title_____            Title Managing Director

Infiltrator Productions Limited            Good Film Productions US, Inc.

By [signature]                           By [signature]

Title Managing Director                   Title Managing Director

Relativity Foreign LLC                    Film Finances, Inc.

By_____              By_____

Title_____            Title_____

EXHIBIT "C"

## WITHDRAWAL OF SALES AGENT FROM LABORATORY PLEDGEHOLDER AGREEMENT

Reference is made to that certain undated fully executed Pledgeholder Agreement (the "Lab Agreement") Relating the Film Provisionally Entitled "The Infiltrator" (the "Picture") among Bank Leumi (UK) plc ("Bank"), Good Film Productions Limited, Lip Sync Productions LLP, Lip Sync Post Limited, Infiltrator Films Limited ("Producer"), Infiltrator Productions Limited, Relativity Foreign LLC ("Sales Agent"), and Film Finances, Inc. The parties to the Lab Agreement hereby agree to amend the Lab Agreement effective as of July 15, 2015 (the "Effective Date")

WHEREAS, Sales Agent has been terminated as the sales agent for the Picture; and

WHEREAS, the parties desire to amend the Lab Agreement to reflect the termination of the Sales Agent.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.      As of the Effective Date, the Sales Agent will no longer be a party to the Lab Agreement and will have no further rights or obligations pursuant to the Lab Agreement to have access to the Picture or otherwise. Producer will enter into an agreement with a replacement Sales Agent in consultation with the Bank, and the parties will thereafter amend the Lab Agreement to add the new sales agent as a party in substitution for Sales Agent.

2.      Sales Agent represents and warrants that Sales Agent is free to enter into this Agreement and to withdraw from the Lab Agreement as provided herein, and Sales Agent is not subject to any obligation or disability which will or is likely to affect the foregoing.

3.      The consequences of Sales Agent's termination shall be as set forth in the Agreement re Resignation of Sales Agent and Termination of Sales Agency Agreement dated as of July 15, 2015, that is being entered into concurrently herewith, including without limitation, Section 3.3 thereof.

4.    Except as hereby amended the Lab Agreement will remain unchanged and in full force and effect.

AGREED:

Lip Sync Post Limited

By_____

Title_____
Bank Leumi (UK) plc                              Good Film Productions Limited

By_____                    By_____

Title_____                    Title_____

Lip Sync Productions LLP,                       Infiltrator Films Limited

By_____                    By_____

Title_____                    Title_____

Infiltrator Productions Limited                 Good Film Productions US, Inc.

By_____                    By_____

Title_____                    Title_____

Relativity Foreign LLC                          Film Finances, Inc.

By _____                     By_____

Title _Dep CRO_____                     Title_____

4.    Except as hereby amended the Lab Agreement will remain unchanged and in full force and effect.

AGREED:

Lip Sync Post Limited

By_____

Title_____

Bank Leumi (UK) plc                          Good Film Productions Limited

By_____          By_____

Title_____          Title_____

Lip Sync Productions LLP,                    Infiltrator Films Limited

By_____          By_____

Title_____          Title_____

Infiltrator Productions Limited                Good Film Productions US, Inc.

By_____          By_____

Title_____          Title_____

Relativity Foreign LLC                        Film Finances, Inc.

By_____          By_____

Title_____          Title_____

**EXHIBIT "D"**

**LIST OF INTERNATIONAL DISTRIBUTION AGREEMENTS AND**
**DISTRIBUTORS CONTACTED FOR THE INFILTRATOR AS OF JULY 15, 2015**

1.  Agreements


2.  Distributors Contacted

EXHIBIT "E"

FORM OF NOTICE TO DISTRIBUTORS

[Relativity letterhead]

[Name and address of Distributor]

Re: "The Infiltrator"

Dear _____

      We are writing to advise you that Relativity Foreign, LLC has resigned as the international sales agent for the film known as "The Infiltrator" produced by Infiltrator Films Limited. All further communications regarding this film should be with the producer, Infiltrator Films Limited (or with such replacement sales agent or servicing agent as the producer may advise you has been appointed). Unless and until you are advised of a new international sales agent or servicing agent who will be your contact, your contact with this film should be:

Infiltrator Films Limited
8 Dean Street
London W1D 3RL
United Kingdom
Attention: Paul Brennan
+44 (0) 207 292 3006
paul.brennan@goodthefilm.com

[For distributors who have signed distribution agreements and notices of assignment add the following]
[Your distribution agreement for the picture remains in full force and effect, and you should continue to perform in accordance with the distribution agreement and to make payments as provided in the Notice of Assignment that you have signed in connection with the film.]

Very truly yours,

Camela Galano for
Relativity Foreign, LLC

SMRH:471488903.5                                   -13-