Craig A. Wolfe, Esq.
Malani J. Cademartori, Esq.
Blanka K. Wolfe, Esq.
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel:  (212) 653-8700
Fax: (212) 653-8701

- and -

Richard L. Wynne, Esq.
Bennett L. Spiegel, Esq.
Lori Sinanyan, Esq. (admitted *pro hac vice*)
**JONES DAY**
222 East 41st Street
New York, NY 10017
Tel:  (212) 326-3939
Fax: (212) 755-7306

*Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RELATIVITY FASHION, LLC, *et al.*,[1] | Case No. 15-11989 (MEW) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING PAYMENTS UNDER A FEE LETTER TO CO-LEAD ARRANGERS APERTURE MEDIA PARTNERS, LLC & EMP MEDIA PARTNERS LLC**

Relativity Fashion, LLC and its affiliated debtors and debtors in possession in these

chapter 11 cases (collectively, the "**Debtors**") hereby submit this motion (the "**Motion**"), for

entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as Exhibit A,

authorizing the Debtors, pursuant to section 363(b) of title 11 of the United States Code, (the

---

[1] The Debtors in these chapter 11 cases are as set forth on page (i).

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Relativity Fashion, LLC (4571); Relativity Holdings LLC (7052); Relativity Media, LLC (0844); Relativity REAL, LLC (1653); RML Distribution Domestic, LLC (6528); RML Distribution International, LLC (6749); RMLDD Financing, LLC (9114); 21 & Over Productions, LLC (7796); 3 Days to Kill Productions, LLC (5747); A Perfect Getaway P.R., LLC (9252); A Perfect Getaway, LLC (3939); Armored Car Productions, LLC (2750); Best of Me Productions, LLC (1490); Black Or White Films, LLC (6718); Blackbird Productions, LLC (8037); Brant Point Productions, LLC (9994); Brick Mansions Acquisitions, LLC (3910); Brilliant Films, LLC (0448); Brothers Productions, LLC (9930); Brothers Servicing, LLC (5849); Catfish Productions, LLC (7728); Cine Productions, LLC (8359); CinePost, LLC (8440); Cisco Beach Media, LLC (8621); Cliff Road Media, LLC (7065); Den of Thieves Films, LLC (3046); Don Jon Acquisitions, LLC (7951); DR Productions, LLC (7803); Einstein Rentals, LLC (5861); English Breakfast Media, LLC (2240); Furnace Films, LLC (3558); Gotti Acquisitions, LLC (6562); Great Point Productions, LLC (5813); Guido Contini Films, LLC (1031); Hooper Farm Music, LLC (3773); Hooper Farm Publishing, LLC (3762); Hummock Pond Properties, LLC (9862); Hunter Killer La Productions, LLC (1939); Hunter Killer Productions, LLC (3130); In The Hat Productions, LLC (3140); J & J Project, LLC (1832); JGAG Acquisitions, LLC (9221); Left Behind Acquisitions, LLC (1367); Long Pond Media, LLC (7197); Madaket Publishing, LLC (9356); Madaket Road Music, LLC (9352); Madvine RM, LLC (0646); Malavita Productions, LLC (8636); MB Productions, LLC (4477); Merchant of Shanghai Productions, LLC (7002); Miacomet Media LLC (7371); Miracle Shot Productions, LLC (0015); Most Wonderful Time Productions, LLC (0426); Movie Productions, LLC (9860); One Life Acquisitions, LLC (9061); Orange Street Media, LLC (3089); Out Of This World Productions, LLC (2322); Paranoia Acquisitions, LLC (8747); Phantom Acquisitions, LLC (6381); Pocomo Productions, LLC (1069); Relative Motion Music, LLC (8016); Relative Velocity Music, LLC (7169); Relativity Development, LLC (5296); Relativity Film Finance II, LLC (9082); Relativity Film Finance III, LLC (8893); Relativity Film Finance, LLC (2127); Relativity Films, LLC (5464); Relativity Foreign, LLC (8993); Relativity India Holdings, LLC (8921); Relativity Jackson, LLC (6116); Relativity Media Distribution, LLC (0264); Relativity Media Films, LLC (1574); Relativity Music Group, LLC (9540); Relativity Production LLC (7891); Relativity Rogue, LLC (3333); Relativity Senator, LLC (9044); Relativity Sky Land Asia Holdings, LLC (9582); Relativity TV, LLC (0227); Reveler Productions, LLC (2191); RML Acquisitions I, LLC (9406); RML Acquisitions II, LLC (9810); RML Acquisitions III, LLC (9116); RML Acquisitions IV, LLC (4997); RML Acquisitions IX, LLC (4410); RML Acquisitions V, LLC (9532); RML Acquisitions VI, LLC (9640); RML Acquisitions VII, LLC (7747); RML Acquisitions VIII, LLC (7459); RML Acquisitions X, LLC (1009); RML Acquisitions XI, LLC (2651); RML Acquisitions XII, LLC (4226); RML Acquisitions XIII, LLC (9614); RML Acquisitions XIV, LLC (1910); RML Acquisitions XV, LLC (5518); RML Bronze Films, LLC (8636); RML Damascus Films, LLC (6024); RML Desert Films, LLC (4564); RML Documentaries, LLC (7991); RML DR Films, LLC (0022); RML Echo Films, LLC (4656); RML Escobar Films LLC (0123); RML Film Development, LLC (3567); RML Films PR, LLC (1662); RML Hector Films, LLC (6054); RML Hillsong Films, LLC (3539); RML IFWT Films, LLC (1255); RML International Assets, LLC (1910); RML Jackson, LLC (1081); RML Kidnap Films, LLC (2708); RML Lazarus Films, LLC (0107); RML Nina Films, LLC (0495); RML November Films, LLC (9701); RML Oculus Films, LLC (2596); RML Our Father Films, LLC (6485); RML Romeo and Juliet Films, LLC (9509); RML Scripture Films, LLC (7845); RML Solace Films, LLC (5125); RML Somnia Films, LLC (7195); RML Timeless Productions, LLC (1996); RML Turkeys Films, LLC (8898); RML Very Good Girls Films, LLC (3685); RML WIB Films, LLC (0102); Rogue Digital, LLC (5578); Rogue Games, LLC (4812); Roguelife LLC (3442); Safe Haven Productions, LLC (6550); Sanctum Films, LLC (7736); Santa Claus Productions, LLC (7398); Smith Point Productions, LLC (9118); Snow White Productions, LLC (3175); Spy Next Door, LLC (3043); Story Development, LLC (0677); Straight Wharf Productions, LLC (5858); Strangers II, LLC (6152); Stretch Armstrong Productions, LLC (0213); Studio Merchandise, LLC (5738); Summer Forever Productions, LLC (9211); The Crow Productions, LLC (6707); Totally Interns, LLC (9980); Tribes of Palos Verdes Production, LLC (6638); Tuckernuck Music, LLC (8713); Tuckernuck Publishing, LLC (3960); Wright Girls Films, LLC (9639); Yuma, Inc. (1669); Zero Point Enterprises, LLC (9558). The location of the Debtors' corporate headquarters is: 9242 Beverly Blvd., Suite 300, Beverly Hills, CA 90210.

"**Bankruptcy Code**"), to pay certain fees to Aperture Media Partners, LLP ("**Aperture**") and EMP Media Partners LLP ("**EMP**") as co-lead arrangers of certain types of financing in accordance with a letter dated November 29, 2015 (the "**Fee Letter**"), which is attached as Exhibit 1 to the Proposed Order.  In support of this Motion, the Debtors submit the Declaration of Ramon Wilson, which is attached hereto as Exhibit B.  In further support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. § 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

### Background

**A.      General Background**

3.      On July 30, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

4.      On August 7, 2015, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors [Dk. 114] (the "**Creditors' Committee**").

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.      Additional factual background relating to the Debtors' businesses and the commencement of these chapter 11 cases is set forth in detail in the *Declaration of Dr. Brian G.*

*Kushner Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of Chapter 11 Petitions and First Day Pleadings*, filed on July 30, 2015, and admitted into evidence on July 31, 2015 [Dk. 14].

7.      On October 6, 2015, the Court entered the *Order (A) Approving the Sale of Substantially All of the Debtors' Television Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Dk. 768].

8.      On October 20, 2015, the sale of the Debtors' television business unit closed.

9.      On November 18, 2015, the Debtors filed the *Disclosure Statement for Plan Proponents' Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Dk. 991] and the *Plan Proponents' Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Dk. 992] (the "**Plan**").   On November 20, 2015, the Debtors filed the *Corrected Disclosure Statement for Plan Proponents' Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Dk. 1009] (the "**Disclosure Statement**").   The hearing on the Disclosure Statement is scheduled for December 16, 2015 [Dk. 995].

**B.      The Fee Letter**[2]

10.      The Debtors entered into the Fee Letter with Aperture and EMP as of November 29, 2015.[3]

---

[2] In the event of any inconsistencies between the provisions of the Fee Letter and the terms set forth herein, the terms of the Fee Letter will govern.  Capitalized terms used in this summary and not otherwise defined herein have the meanings given to them in the Fee Letter.

[3] For the benefit of the Debtors, the Debtors' Chief Executive Officer, in his personal capacity, initially engaged Aperture and EMP beginning in September 2015 when cash collateral constraints prevented the Debtors from engaging Aperture and EMP themselves.  Upon approval of the Fee Letter by the Court, such engagement will no longer be necessary.

11.     Pursuant to the Fee Letter, Aperture and EMP will act as the co-lead arrangers on two potential financing facilities: (i) a $60 million debtor in possession financing facility (the "**DIP Facility**");[4] and (ii) a long-term $250 million print and advertising/ultimates facility to be used for the expenses in connection with the Debtors' motion picture business (the "**Exit Facility**").

12.     Under the Fee Letter, the Debtors have agreed to pay the following fees (collectively, the "**Fees**"): (i) $60,000 per month; and (ii) 2.00% of the aggregate amount of all funds committed by third parties for the DIP Facility and for the Exit Facility (the "**Closing Fee**").  The minimum aggregate fees payable for DIP Facility and the Exit Facility would be $750,000 and $2,500,000, respectively; *provided, however,* that any Closing Fee paid in respect of the DIP Facility shall be credited against any Closing Fee payable in respect of the Exit Facility.  The Fees paid under the Fee Letter will be split evenly by Aperture and EMP.

## Relief Requested

13.     By this Motion, the Debtors seek the authority to pay the Fees to co-lead arrangers Aperture and EMP pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Aperture and EMP have been tasked with and have already undertaken a significant amount of work toward arranging financing for a DIP Facility and/or the Exit Facility for the Debtors. Payment of the Fees will enable Aperture and EMP to continue their efforts to obtain a DIP Facility and/or the Exit Facility which will, in turn, pave the way for the consummation of the

---

[4] On November 26, 2015, the Debtors filed their *Motion of Debtors and Debtors in Possession, Pursuant to 11 U.S.C. §§ 361 and 363, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York, for Entry of an Order Permitting the Debtors to Use Cash Collateral* [Dk. 1033], which, if approved, will obviate the need for a DIP Facility.  Accordingly, Aperture and EMP are currently focusing their efforts on arranging Exit Financing, and the Fees to be approved hereunder will most likely consist solely of the Fees due in connection with the Exit Facility in the minimum amount of $2,500,000.

Plan.  Under the circumstances, the Debtors believe that the relief requested in this Motion is an appropriate exercise of their business judgment and is in the best interests of their estates and creditors.

### Basis For Relief

14.     The Debtors seek the relief requested in this Motion pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  In pertinent part, section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice  and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  "Section 363 [of the Bankruptcy Code] . . . governs the use of funds by the debtor in possession while it operates its business after the bankruptcy petition is filed."  *In re Enron Corp.*, 335 B.R. 22, 27 (S.D.N.Y. 2005).  Section 105(a) of the Bankruptcy Code provides that, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including the provisions of section 363(b).  *See* 11 U.S.C. § 105(a); *Enron Corp.*, 335 B.R. at 27.

**A.     Good Business Reasons Exist to Approve the Fee Letter**

15.     Generally, courts will approve a request for relief under section 363 of the Bankruptcy Code where the debtor demonstrates a sound business justification for seeking such relief.  *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").  To determine if a "good business reason" exists courts apply the business judgment rule.  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).  Courts generally will not interfere with corporate decisions as to what is in their best interest absent a showing of bad faith, self-interest, or gross

negligence. *Id.* Furthermore, parties opposing an exercise of a debtor's business judgment have the burden of rebutting the presumption of validity. *Id.*

16.     A motion to authorize pursuant to section 363(b) of the Bankruptcy Code is further bolstered when it is shown that the relief sought not only has a "'proper business justification'" but "has potential to lead toward confirmation of a plan and is not [designed] to evade the plan confirmation process . . . ." *In re Chrysler LLC,* 405 B.R. 84, 96 (Bankr. S.D.N.Y. 2009).

17.     The payment of Fees to specialized parties has been approved by courts in this and other districts. *See, e.g.*, *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Sep. 21, 2012) (authorizing payment of work fees for the professionals representing an ad hoc group of creditors); *In re ASARCO LLC*, 650 F.3d 593, 603 (5th Cir. 2011) (affirming the decision of the Bankruptcy Court authorizing the payment of certain work fees pursuant to section 363(b) of the Bankruptcy Code to qualified bidders in connection with an auction and sale); *In re Movie Gallery, Inc.*, Case No. 07-33849 (Bankr. E.D. Va. Dec. 4, 2007) (authorizing debtors to pay fees and expenses of backstop party for proposed rights offering); *In re Sea Containers Ltd.*, Case No. 06-11156 (Bankr. D. Del. Nov. 20, 2007) (authorizing debtors to pay diligence-related fees and expenses of prospective exit lenders up to $1.5 million); *In re Tower Auto., Inc.*, Case No. 05-10578 (Bankr. S.D.N.Y. Dec. 21, 2006) (authorizing debtors to pay an additional $1.0 million in diligence fees to prospective new-money equity investors and to potential replacement DIP lenders).

18.     Absent evidence of "self-dealing or manipulation among the parties who negotiated the reimbursement procedures" reimbursement motions should be approved. *In re ASARCO, LLC*, 650 F.3d 593, 603 (5th Cir. 2011) (affirming bankruptcy court decision to

prospectively approve payment of due diligence fees of bidders in an auction for debtor properties pursuant to section 363(b), and (ii) explicitly rejected arguments that such authority could only be granted pursuant to section 503(b)(3)(D)). As discussed above, courts are especially inclined to approve fees, when they will facilitate processes that "maximize the value of [a debtor's] estate." *Id.*

19.     Here, the payment of the Fees proposed to be paid to co-lead arrangers Aperture and EMP under the Fee Letter is based on the sound business judgment of the Debtors. Specifically, Aperture and EMP specialize in arranging the types of financing contemplated under the Exit Facility. Moreover, the work contemplated in the Fee Letter and being undertaken by Aperture and EMP plays an integral part in the Debtors' efforts to move forward with and support the feasibility of the Plan and in reaching a consensual resolution of these chapter 11 cases and an exit from bankruptcy, in the most cost effective and efficient manner possible. It is typical market practice for arrangers like Aperture and EMP to receive a work fee comparable to the Fees in order to commence the structuring of the Exit Facility. Accordingly, the potential benefits to the Debtors, their estates and creditors that will result from payment of the Fees far outweigh the corresponding costs to the Debtors' estates. These payments represent a reasonable prospect of obtaining financing that may facilitate the reorganization efforts and, thus, is in the Debtors' best interests and is consistent with achieving their primary objective of confirmation and consummation of a consensual Plan. Based on the foregoing, the Debtors believe that payment of the Fees is reasonable, appropriate and warranted under the circumstances and is in the Debtors' best interests.

**B.    The Business Judgment Standard Under Section 363(b) of the Bankruptcy Code is the Proper Standard to Apply to the Relief Requested**

20.    Section 363(b) of the Bankruptcy Code and the business judgment rule is the proper standard of review for the relief requested.  Although parties objecting to motions of this type occasionally assert that such motions should be brought pursuant to either section 327(e) (employment of professional persons) or 503(b)(3) of the Bankruptcy Code (allowance of administrative expense for reimbursement), section 363(b) of the Bankruptcy Code is the proper source of authority for the types of payments contemplated here.  *In re Enron Corp.,* 335 B.R. at 29 (affirming bankruptcy court's approval of an application to retain a law firm (and pay its fees) to represent employees of the debtors in a pending investigation pursuant to section 363(b) as opposed to section 327(e)).  The fact that similar relief may be sought under different circumstances pursuant to a different section of the code is irrelevant.  "The authorization of certain types of payments under section 363(b) is not prohibited simply because there is another section of the Bankruptcy Code related to the same type of payment." *Id.* (quoting *In re Bethlehem Steel Corp.*, 2003 WL 2173864, at *11 (S.D.N.Y. July 28, 2003).

21.    Courts have held that the business judgment standard is the better fit because "[s]ection 363 addresses the debtor's use of the estate property."  *ASARCO*, 650 F.3d at 602. The court in *Bethlehem Steel* reached a similar conclusion stating that in situations "where a creditor incurs expenses in attempting to collect on pre-petition claims . . . [t]hat situation is covered by § 503," but where the "[debtor] determined that paying the [creditor's] expenses was a good business decision and would help develop a reorganization plan . . . it was appropriate for the debtors to reimburse the [creditor's professionals] for the reasonable cost of [their] advice and counsel." *Bethlehem*, 2003 WL 2173864, at *11.  Finally, in *AMR Corporation*, the Bankruptcy Court for the Southern District of New York approved the payment of work fees for

-8-

the professionals of an ad hoc committee of professionals pursuant to section 363(b) rather than under section 503(b).  *See AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Sep. 21, 2012).

22.     As such, the Court should authorize the Debtors to pay the Fees to Aperture and EMP pursuant to section 363(b) of the Bankruptcy Code in order to obtain the DIP Facility and the Exit Facility and, ultimately, confirm and consummate the Plan.

## **Waiver of Bankruptcy Rules 6004(a) and (h)**

23.     Due to the exigencies of this case, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As discussed above, the payment of the Fees represent a reasonable prospect of obtaining financing that may facilitate the reorganization efforts and, thus, is in the Debtors' best interests and is consistent with achieving their primary objective of confirmation and consummation of a consensual Plan.

## **Notice**

24.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the counsel to the Creditors' Committee; (c) counsel to the agent (and if there is no agent, counsel to the lender(s)) under each of the Debtors' pre-petition financing facilities; (d) counsel to the agent or lender under the Debtors' post-petition financing facility; (e) the United States Securities and Exchange Commission; (f) the Internal Revenue Service; (g) any other party in interest who has filed a notice of appearance and request for service pursuant to Bankruptcy Rules 2002 and 9010(b); and (h) all parties entitled to notice pursuant to Local Rule 9013-1(b).  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

<u>**No Prior Request**</u>

25.    No previous request for the relief sought herein has been made by the Debtors to

this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter the Proposed

Order substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein;

and (ii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: December 5, 2015
        New York, New York        **SHEPPARD MULLIN RICHTER & HAMPTON LLP**

By: */s/ Malani J. Cademartori*
Craig A. Wolfe, Esq.
Malani J. Cademartori, Esq.
Blanka K. Wolfe, Esq.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 653-8700
Fax: (212) 653-8701
E-mail: cwolfe@sheppardmullin.com
        mcademartori@sheppardmullin.com
        bwolfe@sheppardmullin.com

-and-

**JONES DAY**
Richard L. Wynne, Esq.
Bennett L. Spiegel, Esq.
Lori Sinanyan, Esq. (admitted *pro hac vice*)
222 East 41st Street
New York, NY 10017
Tel:  (212) 326-3939
Fax: (212) 755-7306
E-mail: rlwynne@jonesday.com
        blspiegel@jonesday.com
        lsinanyan@jonesday.com

*Co-Counsel to the Debtors and Debtors in Possession*

-10-

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| RELATIVITY FASHION, LLC, *et al.*,[1] | Case No. 15-11989 (MEW) |
| Debtors. | (Jointly Administered) |

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING THE DEBTORS TO PAY FEES UNDER A FEE LETTER TO CO-LEAD ARRANGERS APERTURE MEDIA PARTNERS, LLC AND EMP MEDIA PARTNERS LLC

Upon the Motion (the "**Motion**")[2] of Relativity Fashion, LLC and its affiliated debtors and debtors in possession in these chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to section 363(b) of the Bankruptcy Code authorizing the Debtors to pay certain Fees to co-lead arrangers Aperture and EMP under the Fee Letter; and it appearing that the Court has jurisdiction over the subject matter of the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that the legal and factual bases set forth in the Motion and on the record at the hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and notice of the Motion appearing to have been sufficient, and no other or further notice being necessary; and after due deliberation and sufficient cause appearing therefor,

---

[1] The Debtors in these chapter 11 cases are as set forth on page (i).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Relativity Fashion, LLC (4571); Relativity Holdings LLC (7052); Relativity Media, LLC (0844); Relativity REAL, LLC (1653); RML Distribution Domestic, LLC (6528); RML Distribution International, LLC (6749); RMLDD Financing, LLC (9114); 21 & Over Productions, LLC (7796); 3 Days to Kill Productions, LLC (5747); A Perfect Getaway P.R., LLC (9252); A Perfect Getaway, LLC (3939); Armored Car Productions, LLC (2750); Best of Me Productions, LLC (1490); Black Or White Films, LLC (6718); Blackbird Productions, LLC (8037); Brant Point Productions, LLC (9994); Brick Mansions Acquisitions, LLC (3910); Brilliant Films, LLC (0448); Brothers Productions, LLC (9930); Brothers Servicing, LLC (5849); Catfish Productions, LLC (7728); Cine Productions, LLC (8359); CinePost, LLC (8440); Cisco Beach Media, LLC (8621); Cliff Road Media, LLC (7065); Den of Thieves Films, LLC (3046); Don Jon Acquisitions, LLC (7951); DR Productions, LLC (7803); Einstein Rentals, LLC (5861); English Breakfast Media, LLC (2240); Furnace Films, LLC (3558); Gotti Acquisitions, LLC (6562); Great Point Productions, LLC (5813); Guido Contini Films, LLC (1031); Hooper Farm Music, LLC (3773); Hooper Farm Publishing, LLC (3762); Hummock Pond Properties, LLC (9862); Hunter Killer La Productions, LLC (1939); Hunter Killer Productions, LLC (3130); In The Hat Productions, LLC (3140); J & J Project, LLC (1832); JGAG Acquisitions, LLC (9221); Left Behind Acquisitions, LLC (1367); Long Pond Media, LLC (7197); Madaket Publishing, LLC (9356); Madaket Road Music, LLC (9352); Madvine RM, LLC (0646); Malavita Productions, LLC (8636); MB Productions, LLC (4477); Merchant of Shanghai Productions, LLC (7002); Miacomet Media LLC (7371); Miracle Shot Productions, LLC (0015); Most Wonderful Time Productions, LLC (0426); Movie Productions, LLC (9860); One Life Acquisitions, LLC (9061); Orange Street Media, LLC (3089); Out Of This World Productions, LLC (2322); Paranoia Acquisitions, LLC (8747); Phantom Acquisitions, LLC (6381); Pocomo Productions, LLC (1069); Relative Motion Music, LLC (8016); Relative Velocity Music, LLC (7169); Relativity Development, LLC (5296); Relativity Film Finance II, LLC (9082); Relativity Film Finance III, LLC (8893); Relativity Film Finance, LLC (2127); Relativity Films, LLC (5464); Relativity Foreign, LLC (8993); Relativity India Holdings, LLC (8921); Relativity Jackson, LLC (6116); Relativity Media Distribution, LLC (0264); Relativity Media Films, LLC (1574); Relativity Music Group, LLC (9540); Relativity Production LLC (7891); Relativity Rogue, LLC (3333); Relativity Senator, LLC (9044); Relativity Sky Land Asia Holdings, LLC (9582); Relativity TV, LLC (0227); Reveler Productions, LLC (2191); RML Acquisitions I, LLC (9406); RML Acquisitions II, LLC (9810); RML Acquisitions III, LLC (9116); RML Acquisitions IV, LLC (4997); RML Acquisitions IX, LLC (4410); RML Acquisitions V, LLC (9532); RML Acquisitions VI, LLC (9640); RML Acquisitions VII, LLC (7747); RML Acquisitions VIII, LLC (7459); RML Acquisitions X, LLC (1009); RML Acquisitions XI, LLC (2651); RML Acquisitions XII, LLC (4226); RML Acquisitions XIII, LLC (9614); RML Acquisitions XIV, LLC (1910); RML Acquisitions XV, LLC (5518); RML Bronze Films, LLC (8636); RML Damascus Films, LLC (6024); RML Desert Films, LLC (4564); RML Documentaries, LLC (7991); RML DR Films, LLC (0022); RML Echo Films, LLC (4656); RML Escobar Films LLC (0123); RML Film Development, LLC (3567); RML Films PR, LLC (1662); RML Hector Films, LLC (6054); RML Hillsong Films, LLC (3539); RML IFWT Films, LLC (1255); RML International Assets, LLC (1910); RML Jackson, LLC (1081); RML Kidnap Films, LLC (2708); RML Lazarus Films, LLC (0107); RML Nina Films, LLC (0495); RML November Films, LLC (9701); RML Oculus Films, LLC (2596); RML Our Father Films, LLC (6485); RML Romeo and Juliet Films, LLC (9509); RML Scripture Films, LLC (7845); RML Solace Films, LLC (5125); RML Somnia Films, LLC (7195); RML Timeless Productions, LLC (1996); RML Turkeys Films, LLC (8898); RML Very Good Girls Films, LLC (3685); RML WIB Films, LLC (0102); Rogue Digital, LLC (5578); Rogue Games, LLC (4812); Roguelife LLC (3442); Safe Haven Productions, LLC (6550); Sanctum Films, LLC (7736); Santa Claus Productions, LLC (7398); Smith Point Productions, LLC (9118); Snow White Productions, LLC (3175); Spy Next Door, LLC (3043); Story Development, LLC (0677); Straight Wharf Productions, LLC (5858); Strangers II, LLC (6152); Stretch Armstrong Productions, LLC (0213); Studio Merchandise, LLC (5738); Summer Forever Productions, LLC (9211); The Crow Productions, LLC (6707); Totally Interns, LLC (9980); Tribes of Palos Verdes Production, LLC (6638); Tuckernuck Music, LLC (8713); Tuckernuck Publishing, LLC (3960); Wright Girls Films, LLC (9639); Yuma, Inc. (1669); Zero Point Enterprises, LLC (9558). The location of the Debtors' corporate headquarters is: 9242 Beverly Blvd., Suite 300, Beverly Hills, CA 90210.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      Pursuant to section 363(b) of the Bankruptcy Code, the Fee Letter is approved in all respects and the Debtors are authorized to honor all of their obligations under the Fee Letter, attached hereto as Exhibit 1, including without limitation reimbursement of expenses, indemnification and exclusivity.

3.      The Fees arising under the Fee Letter are due and payable as and when stated in the Fee Letter.

4.      Aperture and EMP are not required to file fee applications, to comply with the U.S. Trustee fee guidelines, or to have the Fees approved by the Court.

5.      The Debtors are authorized to take all actions they deem necessary and appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6.      The requirements of Bankruptcy Rule 6004(a) are hereby waived.

7.      Notwithstanding any applicability of Bankruptcy Rule 6004(h) or any other Bankruptcy Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Order.

Dated: New York, New York
          December __, 2015

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Fee Letter**

November 29, 2015

Andrew Levin, Chief Legal Officer
Relativity Media, LLC
9242 Beverly Boulevard, Suite 300
Beverly Hills, California 90210

Dear Andrew:

We are pleased to confirm by this agreement (the "Agreement") the arrangements between Relativity Media, LLC and its affiliates ("Borrower"), on the one hand, and Aperture Media Partners, LLC ("AMP") and EMP Media Partners LLC ("EMP" and together with AMP, the "Arranger") on the other hand, under which Arranger is expected to act as the lead arranger on the following financings:

  a)  a post-petition financing facility in an amount up to $60,000,000 to be used for interim financing (but not including the use of cash collateral without advances of new funds) requirements of Borrower (the "DIP Facility") during the course of its currently pending chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York jointly administered under Case No. 15-11989 (MEW) (the "Chapter 11 Cases" and the "Bankruptcy Court"); and

  b)  a non-recourse P&A/Ultimates Facility in an amount up to $250,000,000 to be used to fund the exit of Borrower from bankruptcy under a chapter 11 plan or plans of reorganization and to fund the print and advertising expenses and film ultimates for Borrower as reorganized debtors, or a new company resulting from the reorganization of Borrower, or any entity controlled or managed by, or affiliated with Borrower for the theatrical release of motion pictures and film distribution ultimates through a financing subsidiary of Borrower (the "Long-Term Facility" and together with the DIP Facility, the "Transactions" and each of the DIP Facility or Long-Term Facility, a "Transaction").

As part of Arranger's role as lead arranger, it will require the cooperation of Borrower in the preparation of a presentation and financial model to be used in connection with the arrangement of the Transactions.  Further, Borrower's management shall be available to participate in introductory and due diligence meetings or conference calls with prospective lenders regarding the Transactions.

Borrower and Arranger further acknowledge and agree as follows:

1.  Provided this Agreement has not been terminated in accordance with Section 6 below, Arranger shall be the exclusive lead arranger for the Transactions, and Borrower understands that in such capacity, Arranger shall earn the (i) Closing Fee (defined below) that will be paid at the consummation of a Transaction that is approved as part of an order of the Bankruptcy Court; and (ii) Work Fee (defined below) to be paid as soon as practicable after entry of an order of the Bankruptcy Court under section 363 of the Bankruptcy Code authorizing the payment of the Work Fee to Arranger, with respect to that portion of the Work Fee then due, and when due with respect to that portion not due at the time of the entry of such order.

2.  The agreements providing for the financing contemplated in connection with the Transactions and/or commercial debt will contain representations of each lender that such person has carefully reviewed any disclosure documents used in the arrangement of the loans and has been furnished with all other materials that it considers relevant to the financing, has had a full opportunity to ask questions of and receive answers from the Borrower or any person or persons acting on behalf of the Borrower concerning the terms and conditions of the financing and no statement of printed material which is contrary to the disclosure documents has been made or given to the lender by or on behalf of the Borrower; and that the lender is not relying upon, and has not relied upon, any statement, representation or warranty made by any person, including, without limitation, Arranger, except for the statements, representations and warranties made by the Borrower contained in the respective Transaction documents.

3.   <u>Arranger Fees</u>.  As compensation for their services hereunder, Arrangers shall charge, and the Borrower agrees to pay or cause to be paid, a closing fee (the "<u>Closing Fee</u>") in connection with each Transaction equal to 2.00% of the aggregate amount of all debt committed by third parties for each respective Transaction, provided that the minimum fees payable for DIP Facility and the Long-Term Facility shall be $750,000 and $2,500,000, respectively.  Any Closing Fee paid in respect of the DIP Facility shall be credited against any Closing Fee payable in respect of the Long-Term Facility.

The Closing Fees shall be payable upon consummation of each Transaction, respectively, and Borrower shall consent to and, to the extent necessary, cause such obligation to be disclosed and paid as a condition to closing in the respective Transaction documents;  provided, however, that it is expressly understood that the Long-Term Facility and the Closing Fee arising therefrom only relate to the current "Workout Plan" for Borrower under the Chapter 11 Cases.  The Closing Fee with respect to the Long-Term Facility does not apply in the event the Borrower does not close a Long-Term Facility prior to the later of the conclusion of the Chapter 11 Cases or the conclusion of the Workout Plan; provided, further, that in the event the Borrower consummates, within six months of the conclusion of the Chapter 11 Cases, a P&A or Ultimates financing with a party identified by the Arranger and approved by the Borrower (such approval not to be unreasonably withheld), the Arranger will be paid the Closing Fee on such Transaction for a period of six months after the conclusion of the Chapter 11 Cases.

For purposes hereof, "consummation" means the date on which the Borrower and/or an affiliate that is a party to the Transaction documents authorizes its release of its signature pages thereto or such signature pages with respect to any material Transaction document (in the case of the sale of securities, the primary document by which such sale is effected and in the case of commercial debt, the credit agreement) is effective.

For purposes hereof, "conclusion of the Chapter 11 Cases" means the earlier of the (i) effective date of a chapter 11 plan of reorganization or liquidation for Relativity Media, LLC, (ii) the dismissal of the currently pending chapter 11 case of Relativity Media, LLC, and (iii) conversion of the currently pending chapter 11 case of Relativity Media, LLC to a case under chapter 7 of the Bankruptcy Code.

Borrower agrees to pay when due (i) a work fee to Arranger in the amount of $60,000 that is due immediately upon the entry of the Bankruptcy Court order under section 363 of the Bankruptcy Code referenced above (which Borrower shall use reasonable efforts to obtain before November 25, 2015, (ii) a second work fee of $60,000 that is due on December 1, 2015, and (iii) a third work fee that is due on January 1, 2016 ((i), (ii) and (iii) collectively are the "<u>Work Fee</u>").  For clarification, Borrower shall seek a Bankruptcy Court order for the entire Work Fee.  If this Agreement is terminated in accordance with Section 6 below prior any of the foregoing installments of the Work Fee becoming due on their due dates, such installments shall not be due.  The installments are due and payable on their due dates and are not to be prorated.  The foregoing Work Fee covers the period ending on January 31, 2016, and if Arranger is needed beyond January 31, 2016, Borrower shall obtain a separate order of the Bankruptcy Court authorizing Borrower to pay such additional work fee.  If Borrower is unable to obtain an order approving the Closing Fees and the Work Fee, Arranger shall be under no obligation to continue to provide services and this Agreement will be considered terminated by the Borrower pursuant to Section 6.

Borrower agrees that Arranger shall be entitled to review and approve the motion and order to be entered by the Bankruptcy Court.

Arranger will not be required to make any application for compensation to the Bankruptcy Court in order to receive payment and will not be required to comply with U.S. Trustee guidelines with respect to the recordation of Arranger's time, with respect to expense reimbursement or otherwise.

4.   Borrower shall reimburse Arranger for its reasonable actual third party out of pocket costs and expenses related to the Transaction, including, without limitation, the fees and disbursements of outside counsel whether or not any Transaction is consummated, plus any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in this letter as well as reasonable out of pocket expenses (including travel expenses) of Arranger, its partners, employees and independent contractors.  Such cost and expense reimbursement shall be payable by Borrower upon receipt of an invoice from Arranger, provided the

Arranger shall have obtained prior consent of an authorized officer of Borrower prior to incurring any reimbursable expense.

5.  It is the policy of Arrangers to receive indemnification for providing lead arranger services in connection with financing transactions for borrowers. The Borrower agrees to the provisions with respect to the indemnification of Arrangers set forth in **Annex A**, which is incorporated by reference into this Agreement.  This Section 5, **Annex A** and certain provisions of Sections 3 and 6 shall survive the termination of this Agreement.

6.  Arranger shall be the exclusive Arranger in respect of the Transactions as described in Section 1 hereof.  This Agreement may be terminated by the Borrower at any time with or without cause, effective upon receipt of written notice to that effect by Arranger.  Arrangers shall be entitled to their full fees pursuant to Section 3 of this Agreement in the event that at any time prior to the expiration of a 18-month period following such termination, the Borrower enters into (i) a financing transaction that would preclude the Borrower from entering into the Transactions herein, or (ii) any financing transaction the proceeds of which would be used to fund Borrower's prints and advertising for the theatrical release of motion pictures and film distribution ultimates.  No fee shall be due Arranger (other than any accrued and unpaid Work Fee) if Arranger resigns in which event the Borrower's only obligation shall be to pay amounts due pursuant to Section 4.

7.  This Agreement is subject to Bankruptcy Court approval under section 363 of the Bankruptcy Code and may thus be disclosed publicly as an attachment to a motion seeking such approval.

8.  New York law governs the interpretation and enforcement of this Agreement, regardless of the law that might otherwise apply under applicable principles of conflicts of law.  Borrower and Arranger agree that, in connection with any legal suit or proceeding arising with respect to this Agreement, they shall submit to the jurisdiction of the Bankruptcy Court in the first instance, unless such court abstains or otherwise declines to exercise its jurisdiction or a higher court rules that such court does not have jurisdiction.  If that occurs, Borrower and Arranger shall submit to the jurisdiction of the United States District Court for the Southern District of New York and of any state court located in the city of New York and hereby agrees to venue in such courts.  Any payments to Arranger hereunder shall be made in U.S. dollars and without withholding or deduction of any tax, assessment or other governmental charge (collectively, "Tax") unless required by law; and if Borrower shall be required to deduct or withhold any Tax, or if any Tax is required to be paid by Arrangers solely on account of the services performed hereunder, other than income tax, Borrower shall pay, to Arrangers such additional amounts as shall be required so that the net amount received by Arrangers from the Borrower after such deduction, withholding or payment shall equal the amounts otherwise due to Arranger under this Agreement.

9.  Borrower has authorized the use and disclosure of financial and business information of Borrower in connection with the arrangement of the Transactions and acknowledges Arranger's reliance on such representation. Borrower shall furnish, or cause to have furnished to Arranger such information as Arranger reasonably believes appropriate to its mandate hereunder and as may be customary for transactions of this type, including, without limitation, financial, accounting, tax and other information (all such information so furnished by Borrower being the "Information").  Borrower recognizes that, in connection with its services, Arranger will rely upon and assume the accuracy and completeness of the Information delivered by the Borrower, and will not assume responsibility for the accuracy and completeness thereof.  Arranger covenants that it shall not disseminate any Information to any third party other than Arranger's representatives without prior authorization of Borrower unless Arranger is required to disclose Information by applicable law, regulation or judicial process.  In the event Arranger receives a request to disclose any Confidential Information under such law, regulation, process or otherwise, Arranger shall to the extent legally permissible and practicable notify the Disclosing Party so that it may seek, at its own expense, a protective order.  Arranger shall have no obligation to conduct any independent evaluation or appraisal of the assets or the liabilities of the Borrower, or any other party, or of the historical or prospective performance of Borrower, or to provide and advice or opinions on any related fairness or solvency issues.  If Borrower wishes to obtain such an appraisal, valuation or opinion, it shall engage a qualified independent party to provide such appraisal or opinion.  It is understood and agreed that Arranger will act under this Agreement as an independent contractor and shall not create a fiduciary or agency relationship between Arrangers, on the one hand, and the Borrower and their respective equity holders, managers, officers, directors, employees or creditors on the other.  Except as set forth in Annex A hereto, nothing in this Agreement is

-3-

intended to confer upon any person other than Borrower (including equity holders, employees or creditors of the Borrower) any rights or remedies hereunder or by reason hereof.  In the event that Borrower enters into a Transaction in which AMP and/or EMP is a lender, Borrower agrees to waive any and all claims it has or may have against AMP or EMP, arising under or in connection with this Agreement or in connection with the services provided hereunder, provided, however, nothing herein shall be construed to require AMP or EMP to participate in a Transaction as a lender, nor shall anything herein be construed to preclude AMP or EMP from participating in a Transaction as a lender.

10. Arranger does not provide accounting, tax or legal advice.  Notwithstanding anything herein to the contrary, Borrower is authorized to disclose to any person the U.S. federal and state income tax treatment and tax structure of the potential transaction and all materials of any kind (including tax opinions and other tax analyses) provided to Borrower relating to that treatment and structure, without Arranger imposing any limitation of any kind.  However, any information relating to the tax treatment and tax structure shall remain confidential (and the foregoing sentence shall not apply) to the extent necessary to enable any person to comply with securities laws. For this purpose, "tax structure" is limited to any facts that may be relevant to that treatment.

11. In connection with this Agreement, Arranger and/or their partners individually shall have the right to be identified as the exclusive Arranger in any press releases associated with the Transaction.  Pursuant to this right, Borrower agrees to provide reasonable notice to Arranger prior to the release of any such press releases, and shall make reasonable efforts to review and provide comments to same.  Notwithstanding the foregoing two sentences, Arranger acknowledges that Borrower has pending Chapter 11 Cases and the timing of public disclosures cannot be controlled as a result of exigent circumstances and other variables.  Accordingly, nothing in this Section 11 shall preclude Borrow from exercising its fiduciary duty or sound business judgment in making public disclosures.

12. Notwithstanding anything herein to the contrary, Borrower acknowledges that obtaining financing (especially in the context of an insolvent or potentially insolvent borrower in bankruptcy) presents many challenges and is dependent on many factors outside the control of Arranger.  Arranger thus cannot and is not guaranteeing any financing or other results from this Agreement.

13. This Agreement may be executed by any of the parties hereto in any number of counterparts and by facsimile, each of which shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

14. This agreement, and the rights and obligations of the parties hereto, shall be subject to approval by the Bankruptcy Court.  This agreement shall become void and of no effect if (i) the Bankruptcy Court has not entered a court order, in all respects acceptable to Arranger in its sole discretion, approving this Agreement and the parties' rights and obligations under the agreement (the "Approval Order") on or before December 17, 2015 or (ii) such Approval Order has not become final and no longer subject to appeal on or before January 2, 2016.  The foregoing dates may be extended with the written consent of Arranger in its sole discretion.

Should the foregoing be in accordance with your understanding, please confirm by signing and returning to us this Agreement, which shall thereupon constitute a binding agreement as of the date set forth above.

Very truly yours,

Agreed:

APERTURE MEDIA PARTNERS, LLC

RELATIVITY MEDIA, LLC

By: _____

By: _____

Name: Jared Underwood

Name: Andrew Levin

Title: Chief Executive Officer

Title: Chief Legal Officer

Date: _____12-04-15_____

Date: _____

EMP MEDIA PARTNERS LLC

By: _____Peam/Hoffman_____

Name: Peter Hoffman

Title: Partner

Date: _____12-04-2015_____

-5-

Should the foregoing be in accordance with your understanding, please confirm by signing and returning to us this Agreement, which shall thereupon constitute a binding agreement as of the date set forth above.

Very truly yours,                                              Agreed:

APERTURE MEDIA PARTNERS, LLC                   RELATIVITY MEDIA, LLC

By: _____          By: _____

    Name: Jared Underwood                          Name: Andrew Levin

    Title: Chief Executive Officer                   Title: Chief Legal Officer

Date: _____        Date: 12/4/15


EMP MEDIA PARTNERS LLC

By: _____

    Name: Peter Hoffman

    Title: Partner

Date: 12-04-2015

-5-

### Annex A

This Annex is attached to, and constitutes a material part of, that certain agreement (the "Agreement") dated November 29, 2015 between the Borrower and Arranger.  Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As a material part of the consideration for the agreement of Arranger to provide services under the Agreement, the Borrower agrees (i) to indemnify, defend and hold harmless Arranger and their affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, independent contractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or relating to the Agreement, Arranger's services under the Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Borrower in connection with the Agreement, and (ii) to reimburse each Indemnified Party for all out-of-pocket expenses (including, without limitation, the fees and expenses of outside legal counsel) to be due as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding (each, a "Proceeding"), pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to the Agreement, or such services, Transaction or actions.  However, Borrower shall not be liable under the foregoing indemnity and reimbursement agreement to the extent of any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted from the bad faith, willful misconduct or gross negligence of such Indemnified Party, and in such case, the Indemnified Party shall remit, upon Borrower's written request, to Borrower any amounts paid and any expenses advanced by Borrower to such Indemnified Party hereunder to the extent attributable to such loss, claim, damage or liability, subject to such Indemnified Party's rights of contribution set forth below.

Borrower further agrees that neither Arranger nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to Borrower or any person or entity asserting claims on behalf of or in right of the Borrower related to or arising out of the Agreement, Arranger's services under the Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Borrower in connection with the Agreement, except to the extent of losses, claims, damages or liabilities incurred by the Borrower that are finally judicially determined by a court of competent jurisdiction to have resulted from the bad faith, willful misconduct or gross negligence of such Indemnified Party, provided, however, that Indemnified Parties shall not be liable for incidental, indirect and/or consequential damages of any kind, even if Borrower has been advised of the possibility of such damages.  The existence of more than one claim shall not enlarge or extend this limit. The indemnity, reimbursement, and other obligations and agreements of Borrower set forth in the Agreement (i) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, (ii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of such parties or any Indemnified Party or any person controlling any of them, (iii) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, the Agreement and (iv) shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of Borrower and the Indemnified Parties.

All requests by Indemnified Parties for the payment of indemnification, contribution or otherwise as set forth in the Agreement shall be made by means of an application to the Bankruptcy Court (an "Indemnification Application") and shall be subject to review by the Bankruptcy Court and parties in interest entitled to review such applications to ensure that payment of such indemnity conforms to the terms of the Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; provided that in no event shall any Indemnified Party (including Arranger) be indemnified if Borrower or a representative of Borrower's bankruptcy estates assert a claim for, and a court of competent jurisdiction determines by final nonappealable order that such claim arose out of such Indemnified Party's own bad faith, gross negligence or willful misconduct.

In the event an Indemnified Person seeks reimbursement from Borrower for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Agreement, the invoices and supporting time records from such attorneys shall be included in the Indemnification Application, and such invoices and time records shall be subject to the U.S. Trustee fee guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

Unless the Bankruptcy Court (or other court of competent jurisdiction as contemplated in Section 8 of the Agreement) orders otherwise, Borrower shall not (i) settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or

potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Arrangers, or (ii) admit liability on the part of the Arranger without the prior written consent of the Arranger.

**The provisions of this <u>Annex A</u> shall survive any termination or completion of the services provided by this Agreement**.

**<u>Exhibit B</u>**

**Wilson Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RELATIVITY FASHION, LLC, *et al.*,[1] | Case No. 15-11989 (MEW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF RAMON WILSON IN SUPPORT OF DEBTORS'**
**MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b)**
**AUTHORIZING PAYMENTS UNDER A FEE LETTER TO CO-LEAD ARRANGERS**
**APERTURE MEDIA PARTNERS, LLC AND EMP MEDIA PARTNERS LLC**

I, Ramon Wilson, make this declaration under 28 U.S.C. § 1746:

1.      I submit this Declaration in support of the *Debtors' Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing Payment Under a Fee Letter to Co-Lead Arrangers Aperture Media Partners, LLC and EMP Media Partners LLC* (the "**Motion**").[2]

2.      I am the Interim President of Relativity Media, LLC.  In this capacity, I am familiar with the Debtors' businesses, operations and financial affairs.  Except as otherwise indicated herein, I have personal knowledge of the matters and issues set forth herein or have gained knowledge of such matters from my review of the relevant documents, or from information provided to me or verified by the Debtors' other management, employees, and/or professional advisors.  If called upon to testify, I would testify competently to the facts set forth herein.

3.      I have reviewed the Motion or have otherwise had the contents of the Motion explained to me and, to the best of my knowledge, insofar as I have been able to ascertain after

---

[1] The Debtors in these chapter 11 cases are as set forth on page (i).

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Relativity Fashion, LLC (4571); Relativity Holdings LLC (7052); Relativity Media, LLC (0844); Relativity REAL, LLC (1653); RML Distribution Domestic, LLC (6528); RML Distribution International, LLC (6749); RMLDD Financing, LLC (9114); 21 & Over Productions, LLC (7796); 3 Days to Kill Productions, LLC (5747); A Perfect Getaway P.R., LLC (9252); A Perfect Getaway, LLC (3939); Armored Car Productions, LLC (2750); Best of Me Productions, LLC (1490); Black Or White Films, LLC (6718); Blackbird Productions, LLC (8037); Brant Point Productions, LLC (9994); Brick Mansions Acquisitions, LLC (3910); Brilliant Films, LLC (0448); Brothers Productions, LLC (9930); Brothers Servicing, LLC (5849); Catfish Productions, LLC (7728); Cine Productions, LLC (8359); CinePost, LLC (8440); Cisco Beach Media, LLC (8621); Cliff Road Media, LLC (7065); Den of Thieves Films, LLC (3046); Don Jon Acquisitions, LLC (7951); DR Productions, LLC (7803); Einstein Rentals, LLC (5861); English Breakfast Media, LLC (2240); Furnace Films, LLC (3558); Gotti Acquisitions, LLC (6562); Great Point Productions, LLC (5813); Guido Contini Films, LLC (1031); Hooper Farm Music, LLC (3773); Hooper Farm Publishing, LLC (3762); Hummock Pond Properties, LLC (9862); Hunter Killer La Productions, LLC (1939); Hunter Killer Productions, LLC (3130); In The Hat Productions, LLC (3140); J & J Project, LLC (1832); JGAG Acquisitions, LLC (9221); Left Behind Acquisitions, LLC (1367); Long Pond Media, LLC (7197); Madaket Publishing, LLC (9356); Madaket Road Music, LLC (9352); Madvine RM, LLC (0646); Malavita Productions, LLC (8636); MB Productions, LLC (4477); Merchant of Shanghai Productions, LLC (7002); Miacomet Media LLC (7371); Miracle Shot Productions, LLC (0015); Most Wonderful Time Productions, LLC (0426); Movie Productions, LLC (9860); One Life Acquisitions, LLC (9061); Orange Street Media, LLC (3089); Out Of This World Productions, LLC (2322); Paranoia Acquisitions, LLC (8747); Phantom Acquisitions, LLC (6381); Pocomo Productions, LLC (1069); Relative Motion Music, LLC (8016); Relative Velocity Music, LLC (7169); Relativity Development, LLC (5296); Relativity Film Finance II, LLC (9082); Relativity Film Finance III, LLC (8893); Relativity Film Finance, LLC (2127); Relativity Films, LLC (5464); Relativity Foreign, LLC (8993); Relativity India Holdings, LLC (8921); Relativity Jackson, LLC (6116); Relativity Media Distribution, LLC (0264); Relativity Media Films, LLC (1574); Relativity Music Group, LLC (9540); Relativity Production LLC (7891); Relativity Rogue, LLC (3333); Relativity Senator, LLC (9044); Relativity Sky Land Asia Holdings, LLC (9582); Relativity TV, LLC (0227); Reveler Productions, LLC (2191); RML Acquisitions I, LLC (9406); RML Acquisitions II, LLC (9810); RML Acquisitions III, LLC (9116); RML Acquisitions IV, LLC (4997); RML Acquisitions IX, LLC (4410); RML Acquisitions V, LLC (9532); RML Acquisitions VI, LLC (9640); RML Acquisitions VII, LLC (7747); RML Acquisitions VIII, LLC (7459); RML Acquisitions X, LLC (1009); RML Acquisitions XI, LLC (2651); RML Acquisitions XII, LLC (4226); RML Acquisitions XIII, LLC (9614); RML Acquisitions XIV, LLC (1910); RML Acquisitions XV, LLC (5518); RML Bronze Films, LLC (8636); RML Damascus Films, LLC (6024); RML Desert Films, LLC (4564); RML Documentaries, LLC (7991); RML DR Films, LLC (0022); RML Echo Films, LLC (4656); RML Escobar Films LLC (0123); RML Film Development, LLC (3567); RML Films PR, LLC (1662); RML Hector Films, LLC (6054); RML Hillsong Films, LLC (3539); RML IFWT Films, LLC (1255); RML International Assets, LLC (1910); RML Jackson, LLC (1081); RML Kidnap Films, LLC (2708); RML Lazarus Films, LLC (0107); RML Nina Films, LLC (0495); RML November Films, LLC (9701); RML Oculus Films, LLC (2596); RML Our Father Films, LLC (6485); RML Romeo and Juliet Films, LLC (9509); RML Scripture Films, LLC (7845); RML Solace Films, LLC (5125); RML Somnia Films, LLC (7195); RML Timeless Productions, LLC (1996); RML Turkeys Films, LLC (8898); RML Very Good Girls Films, LLC (3685); RML WIB Films, LLC (0102); Rogue Digital, LLC (5578); Rogue Games, LLC (4812); Roguelife LLC (3442); Safe Haven Productions, LLC (6550); Sanctum Films, LLC (7736); Santa Claus Productions, LLC (7398); Smith Point Productions, LLC (9118); Snow White Productions, LLC (3175); Spy Next Door, LLC (3043); Story Development, LLC (0677); Straight Wharf Productions, LLC (5858); Strangers II, LLC (6152); Stretch Armstrong Productions, LLC (0213); Studio Merchandise, LLC (5738); Summer Forever Productions, LLC (9211); The Crow Productions, LLC (6707); Totally Interns, LLC (9980); Tribes of Palos Verdes Production, LLC (6638); Tuckernuck Music, LLC (8713); Tuckernuck Publishing, LLC (3960); Wright Girls Films, LLC (9639); Yuma, Inc. (1669); Zero Point Enterprises, LLC (9558). The location of the Debtors' corporate headquarters is: 9242 Beverly Blvd., Suite 300, Beverly Hills, CA 90210

reasonable inquiry, I believe that the approval of the relief requested therein is necessary to maximize the value of the Debtors' estates and to support the Plan process and the Debtors' ultimate exit from bankruptcy.

4.      Specifically, I believe that the entry of the Fee Letter is based on the sound business judgment of the Debtors and that the financing to be arranged by Aperture and EMP will play an integral part of the Debtors' efforts to move forward with the Plan.  It is my view that the potential benefits to the Debtors, their estates and creditors that will result from payment of the Fees far outweigh the corresponding costs to the Debtors' estates.  I believe that the payment of the Fees represent a reasonable prospect of obtaining financing that may facilitate the reorganization efforts and, thus, is in the Debtors' best interests and is consistent with achieving their primary objective of confirmation and consummation of a consensual Plan.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: December 5, 2015
        Beverley Hills, California                    /s/ Ramon Wilson
                                                      Ramon Wilson
                                                      Interim President, Relativity Media, LLC