Hearing Date and Time:  January 20, 2016 at 10:00 a.m. E.T.
Objection Deadline:  January 18, 2016 at  4:00 p.m. E.T.

Richard L. Wynne, Esq.
Bennett L. Spiegel, Esq.
Lori Sinanyan, Esq. (admitted *pro hac vice*)
**JONES DAY**
222 East 41st Street
New York, NY 10017
Tel: (212) 326-3939
Fax: (212) 755-7306

- and -

Craig A. Wolfe, Esq.
Malani J. Cademartori, Esq.
Blanka K. Wolfe, Esq.
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

*Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RELATIVITY FASHION, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11989 (MEW)<br><br>(Jointly Administered)<br><br>Related Docket Nos.: 1223, 1225, 1226 |

**OBJECTION OF DEBTORS AND DEBTORS IN POSSESSION TO
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
MOTION FOR AN ORDER PURSUANT TO RULE 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING THE SETTLEMENT AGREEMENT
BETWEEN THE COMMITTEE AND THE MANCHESTER PARTIES**

---

[1] The Debtors in these chapter 11 cases are as set forth on page (i).

NAI-1500639728v6

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Relativity Fashion, LLC (4571); Relativity Holdings LLC (7052); Relativity Media, LLC (0844); Relativity REAL, LLC (1653); RML Distribution Domestic, LLC (6528); RML Distribution International, LLC (6749); RMLDD Financing, LLC (9114); 21 & Over Productions, LLC (7796); 3 Days to Kill Productions, LLC (5747); A Perfect Getaway P.R., LLC (9252); A Perfect Getaway, LLC (3939); Armored Car Productions, LLC (2750); Best of Me Productions, LLC (1490); Black Or White Films, LLC (6718); Blackbird Productions, LLC (8037); Brant Point Productions, LLC (9994); Brick Mansions Acquisitions, LLC (3910); Brilliant Films, LLC (0448); Brothers Productions, LLC (9930); Brothers Servicing, LLC (5849); Catfish Productions, LLC (7728); Cine Productions, LLC (8359); CinePost, LLC (8440); Cisco Beach Media, LLC (8621); Cliff Road Media, LLC (7065); Den of Thieves Films, LLC (3046); Don Jon Acquisitions, LLC (7951); DR Productions, LLC (7803); Einstein Rentals, LLC (5861); English Breakfast Media, LLC (2240); Furnace Films, LLC (3558); Gotti Acquisitions, LLC (6562); Great Point Productions, LLC (5813); Guido Contini Films, LLC (1031); Hooper Farm Music, LLC (3773); Hooper Farm Publishing, LLC (3762); Hummock Pond Properties, LLC (9862); Hunter Killer La Productions, LLC (1939); Hunter Killer Productions, LLC (3130); In The Hat Productions, LLC (3140); J&J Project, LLC (1832); JGAG Acquisitions, LLC (9221); Left Behind Acquisitions, LLC (1367); Long Pond Media, LLC (7197); Madaket Publishing, LLC (9356); Madaket Road Music, LLC (9352); Madvine RM, LLC (0646); Malavita Productions, LLC (8636); MB Productions, LLC (4477); Merchant of Shanghai Productions, LLC (7002); Miacomet Media LLC (7371); Miracle Shot Productions, LLC (0015); Most Wonderful Time Productions, LLC (0426); Movie Productions, LLC (9860); One Life Acquisitions, LLC (9061); Orange Street Media, LLC (3089); Out Of This World Productions, LLC (2322); Paranoia Acquisitions, LLC (8747); Phantom Acquisitions, LLC (6381); Pocomo Productions, LLC (1069); Relative Motion Music, LLC (8016); Relative Velocity Music, LLC (7169); Relativity Development, LLC (5296); Relativity Film Finance II, LLC (9082); Relativity Film Finance III, LLC (8893); Relativity Film Finance, LLC (2127); Relativity Films, LLC (5464); Relativity Foreign, LLC (8993); Relativity India Holdings, LLC (8921); Relativity Jackson, LLC (6116); Relativity Media Distribution, LLC (0264); Relativity Media Films, LLC (1574); Relativity Music Group, LLC (9540); Relativity Production LLC (7891); Relativity Rogue, LLC (3333); Relativity Senator, LLC (9044); Relativity Sky Land Asia Holdings, LLC (9582); Relativity TV, LLC (0227); Reveler Productions, LLC (2191); RML Acquisitions I, LLC (9406); RML Acquisitions II, LLC (9810); RML Acquisitions III, LLC (9116); RML Acquisitions IV, LLC (4997); RML Acquisitions IX, LLC (4410); RML Acquisitions V, LLC (9532); RML Acquisitions VI, LLC (9640); RML Acquisitions VII, LLC (7747); RML Acquisitions VIII, LLC (7459); RML Acquisitions X, LLC (1009); RML Acquisitions XI, LLC (2651); RML Acquisitions XII, LLC (4226); RML Acquisitions XIII, LLC (9614); RML Acquisitions XIV, LLC (1910); RML Acquisitions XV, LLC (5518); RML Bronze Films, LLC (8636); RML Damascus Films, LLC (6024); RML Desert Films, LLC (4564); RML Documentaries, LLC (7991); RML DR Films, LLC (0022); RML Echo Films, LLC (4656); RML Escobar Films LLC (0123); RML Film Development, LLC (3567); RML Films PR, LLC (1662); RML Hector Films, LLC (6054); RML Hillsong Films, LLC (3539); RML IFWT Films, LLC (1255); RML International Assets, LLC (1910); RML Jackson, LLC (1081); RML Kidnap Films, LLC (2708); RML Lazarus Films, LLC (0107); RML Nina Films, LLC (0495); RML November Films, LLC (9701); RML Oculus Films, LLC (2596); RML Our Father Films, LLC (6485); RML Romeo and Juliet Films, LLC (9509); RML Scripture Films, LLC (7845); RML Solace Films, LLC (5125); RML Somnia Films, LLC (7195); RML Timeless Productions, LLC (1996); RML Turkeys Films, LLC (8898); RML Very Good Girls Films, LLC (3685); RML WIB Films, LLC (0102); Rogue Digital, LLC (5578); Rogue Games, LLC (4812); Roguelife LLC (3442); Safe Haven Productions, LLC (6550); Sanctum Films, LLC (7736); Santa Claus Productions, LLC (7398); Smith Point Productions, LLC (9118); Snow White Productions, LLC (3175); Spy Next Door, LLC (3043); Story Development, LLC (0677); Straight Wharf Productions, LLC (5858); Strangers II, LLC (6152); Stretch Armstrong Productions, LLC (0213); Studio Merchandise, LLC (5738); Summer Forever Productions, LLC (9211); The Crow Productions, LLC (6707); Totally Interns, LLC (9980); Tribes of Palos Verdes Production, LLC (6638); Tuckernuck Music, LLC (8713); Tuckernuck Publishing, LLC (3960); Wright Girls Films, LLC (9639); Yuma, Inc. (1669); Zero Point Enterprises, LLC (9558). The location of the Debtors' corporate headquarters is: 9242 Beverly Blvd., Suite 300, Beverly Hills, CA 90210.

TO THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**" or "**Relativity**"), hereby submit this objection (the "**Objection**") to *The Official Committee of Unsecured Creditors' Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving the Settlement Agreement Between the Committee and the Manchester Parties* [Docket No. 1223] (the "**Motion**").[2] In support of this Objection, the Debtors respectfully state as follows:

**Preliminary Statement**

1.      Settlement among the Debtors, Manchester Securities Corp. ("**Manchester Securities**"), Manchester Library Company LLC, Heatherden Securities LLC, Heatherden Securities Corp., Heatherden Holdings LLC, Beverly Blvd 2 Holdings LLC, Beverly Blvd 2 LLC, Elliot Management Corporation, Elliot Associates, L.P., Elliot Capital Advisors, L.P., Elliot International, L.P., Braxton Associates, Inc., and Elliot International Capital Advisors, Inc. (collectively, the "**Creditor Parties**" or the "**Manchester Parties**") and the Unofficial Committee of Unsecured Creditors (the "**Committee**") is among the milestones that the Debtors and the Committee have diligently pursued since the commencement of these chapter 11 cases, and the Debtors are grateful for the progress that the Committee has made in this endeavor. Unfortunately, the Settlement Agreement executed by the Committee and the Creditor Parties on January 8, 2016 (the "**Settlement Agreement**") falls short of accomplishing its stated goal: to clear the obstacles that the Creditor Parties continue to place in the way of a successful reorganization of the Debtors.

---

[2]    Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

2. As a consequence, the Settlement Agreement should not be approved absent the changes enumerated herein. First, all of the Creditor Parties must be bound to the settlement with the Debtors' estates. Under the Settlement Agreement, the Creditor Parties remain free to oppose and/or reject the *Plan Proponents' Second Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1143] (the "**Plan**"). See Settlement Agreement, §§ III and IX. Second, the Settlement Agreement leaves Manchester Securities free to claim secured creditor status (as they have in fact done subsequent to the filing of the Motion), which is inconsistent with the interim agreements that the parties negotiated in connection with the October transactions which served as the foundation for the Plan. See Settlement Agreement, § III. Third, the Settlement Agreement purports to require amendments to the Plan that are, at best, vague and ambiguous and, at worst, impossible to consummate in the case of unspecified third party releases.[3] See Settlement Agreement, § VIII. Fourth, the Settlement Agreement depends, in part, on the *Amended and Restated Final Order Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code (I) Authorizing Debtors to Obtain Superpriority Secured Debtor-in-Possession Financing, (II) Authorizing Debtors to use Cash Collateral, (III) Granting Adequate Protection to the Cortland Parties and Manchester Parties and (IV) Granting Related Relief* [Docket No. 931] (the "**Final DIP and Cash Collateral Order**") which never became effective. See Settlement Agreement, § VIII. In addition, the Settlement Agreement does not subject the fees and expenses of the Creditor Parties to review for reasonableness in the same manner as other professionals. See Settlement Agreement, § VI. Finally, although the Settlement Agreement does provide for a brief extension

---

[3] To the extent that the Settlement Agreement purports to accomplish an "on the record" negotiation of plan terms, it is improper as violative of Federal Rule of Evidence 408, among other rules.

NAI-1500639728v6                    -3-

of the DIP Facility under the Final DIP and Cash Collateral Order (the "**New DIP Facility**"), the proposed extension to January 31, 2016 (a Sunday) is meaningless where the confirmation hearing for the Plan is scheduled for February 1, 2016 and the Settlement Agreement is internally inconsistent since it also provides that the New DIP Facility must be satisfied on the Effective Date of the Plan which could never occur before February 2, 2016, at the earliest. See Settlement Agreement, §§ VII and VIII.

3. The Settlement Agreement thus requires essential, albeit modest, modifications in order to satisfy the intentions for which it was negotiated: to clear the pathway for a consensual restructuring of the Debtors. Absent such modifications, the Court should deny approval of the settlement. At a minimum, the Court should defer approval of the Settlement Agreement until the February 1 confirmation hearing in order to permit the parties to reconcile the Settlement Agreement with the Plan.[4]

---

[4] It bears noting that the Creditor Parties insisted that the Committee not share any drafts of the Settlement Agreement before it was filed with the Motion. See In re Dalen, 259 B.R. 586, 608 (Bankr. W.D. Mich. 2001) ("bankruptcy courts should generally not approve settlements which do not involve the bankruptcy trustee or the debtor-in-possession").

NAI-1500639728v6                              -4-

**Background**

4. On August 27, 2015, the Court entered the *Final Order Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code (I) Authorizing Debtors to Obtain Superpriority Secured Debtor-In-Possession Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Adequate Protection to the Cortland Parties, and (IV) Granting Related Relief* [Docket No. 342] (the "**Final DIP Order**") authorizing the Debtors to obtain $49,500,000 in postpetition debtor in possession financing (the "**Existing DIP Facility**") from certain of the Debtors' prepetition secured lenders (the "**DIP Lenders**") pursuant to the DIP Credit Agreement (as defined in and amended by the Final DIP Order) (see Docket No. 48, Ex. 2).

5. Following marathon negotiations resulting in interim agreements allowing the Debtors to pursue a plan of reorganization in these chapter 11 cases, on October 6, 2015, the Court so ordered the *Stipulation and Agreed Order* [Docket No. 769] (the "**Stipulation**") between (a) the Debtors, (b) the DIP Lenders, (c) the Manchester Parties (as defined in the Stipulation), and (d) the "Additional Investors" (collectively, the "**Parties**").[5] The Stipulation represents one piece of a global agreement between the Parties to provide the Debtors' with an opportunity to reorganize their business around their core business assets (the "**Global Agreement**"). In addition to the Stipulation, the Parties have executed various commitment letters (the "**Commitments**"), which form the foundation of the Debtors' proposed chapter 11 plan of reorganization.

---

[5] The "Additional Investors," who have funded their obligations under the Commitments, include Joseph Nicholas, the Manchester parties, and Ryan Kavanaugh.

6. In addition, consistent with the Stipulation, the Debtors presented for Court approval the alternative, New DIP Facility. The documentation of the New DIP Facility included, among other things, provision for certain warrants in favor of the Manchester Parties. At the time, the Court requested that the parties remove such provisions from the New DIP Facility and instead include such provisions in the final Plan.

7. Accordingly, the parties successfully negotiated a revised New DIP Facility to accommodate these changes, and on October 30, 2015, the Debtors filed a *Notice of Filing Revised Proposed Amended and Restated Final Order Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code (I) Authorizing Debtors to Obtain Superpriority Secured Debtor-in-Possession Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Adequate Protection to the Cortland Parties and Manchester Parties and (IV) Granting Related Relief*, which attached a proposed amended and restated Final DIP and Cash Collateral Order and debtor in possession financing agreement [Docket No. 926].

8. On November 2, 2015, the Court entered the Final DIP and Cash Collateral Order, which attached as Exhibit 1 the Amended and Restated Debtor-In-Possession Financing Agreement, dated as of October 20, 2015 (the "**Amended and Restated DIP Financing Agreement**"). As stated by the Manchester Parties at the October 27 hearing, however, neither the Final DIP and Cash Collateral Order nor the New DIP Facility were ever declared effective by the Manchester Parties due to the lack of consensus and court approval with respect to the warrant terms. Hr'g Tr. Oct. 27, 2015, 29:18-24 ("… to the extent Your Honor has excised from this DIP agreement provisions that would take effect upon a plan, we are going to need to get together with the parties to those term sheets and make sure the term sheets adequately incorporate those things before my client will be able to go forward with the DIP

agreement."). The Manchester Parties have repeatedly taken this position at subsequent hearings, and the Debtors, as a consequence, continued to seek a series of consensual bridge orders for extensions of the Existing DIP Facility, which the Manchester Parties ultimately refused to continue to entertain after November 16, 2015. <u>See</u> <u>e.g.</u> Hr'g Tr. Dec. 12, 2015, 58:8-10 ("As counsel has noted, the DIP is mature today. We don't have until the end of January. It's mature. It's been mature for weeks.")

9. The primary negotiations regarding warrants for the Manchester Parties have been conducted among the Additional Investors. In October 2015, those parties undertook to negotiate the Debtors' Plan in good faith.[6] The Debtors' last proposal to resolve these matters was transmitted to the Manchester Parties on December 30, 2015. With the Settlement Agreement, the Manchester Parties attached their last markup regarding the warrant provisions which was dated December 22, 2015.

**Argument**

*All of the Creditor Parties Must be Bound to the Settlement with the Debtors' Estates*

10. The Settlement Agreement provides:

> The Creditor Parties shall retain their rights to object to any chapter 11 plans in the Cases. The Creditor Parties shall also retain the separate right to object to and contest any releases of third party or derivative claims or rights or related injunctions contained in any chapter 11 plans in the Cases.

Settlement Agreement, § IX.

---

[6] Specifically, the Investor Term Sheet provides: "As promptly as practicable, the Company, the Cortland Lenders, Manchester, the CEO and the UCC shall use commercially reasonable efforts to draft Definitive Agreements, including the Plan and the Disclosure Statement to pursue confirmation of the Plan."

11. Given the litigious nature of the Creditor Parties in these chapter 11 cases to date, the foregoing provision renders the Settlement largely meaningless, affording the Creditor Parties countless opportunities to interfere not only with the Debtors restructuring but also the opportunity of the unsecured creditors to receive a meaningful recovery. Accordingly, even Manchester Securities' agreement to subordinate the Manchester Claim to certain recoveries of unsecured creditors is rendered ineffective by this provision. In order to be reasonable, any settlement with the Creditor Parties must afford the estate a final resolution with the Creditor Parties. See In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758 (in considering whether to approve a settlement, a bankruptcy court is required to review the reasonableness of the proposed settlement).

*Manchester Securities Has Already Agreed to an Unsecured Creditor Recovery Only*

12. On October 2, 2015, in connection with the Global Agreement, Manchester Securities and the Additional Investors executed the Investor Term Sheet, which is attached as Exhibit C to the Settlement Agreement. Among other things, the Investor Term Sheet provides: "Treatment of the Manchester Credit Facility under the Plan shall not provide for post-Effective Date survival of those claims but shall participate pro-rata in distributions to unsecured creditors to the extent allowed." On the other hand, the Settlement Agreement provides "Manchester Securities shall in all circumstances retain its rights to the Manchester Claim…." Settlement Agreement, § III.B.1. Shortly after the filing of the Motion, Manchester Securities filed the *Limited Motion and Reservation of Rights of Manchester Securities Corp. with respect to Classification of Manchester Claims in Second Amended Plan of Reorganization* [Docket No. 1270] (the "**Secured Claim Motion**"), seeking to preserve its alleged rights to assert secured claims against certain of the Debtors.

NAI-1500639728v6                                -8-

13. Accordingly, there is a conflict between Manchester Securities' prior agreements and the Settlement Agreement, or at least, Manchester Securities' interpretation of the Settlement Agreement. Any settlement with the Creditor Parties should be clear and unambiguous: the Creditor Parties should be entitled to receive solely the consideration provided under the Global Agreement and a participation in recoveries to unsecured creditors under the Plan, subject to the subordination provided in the Settlement Agreement. See In re Arkoosh Produce, Inc., 2003 WL 25273746, at *12 (Bankr. D. Idaho July 1, 2003)(denying approval of settlement on account of ambiguous structure of the settlement proposal). Again, ambiguity will only give rise to further litigation, such as the Secured Claim Motion, the avoidance of which is one of the stated purposes of the Settlement Agreement. See Motion at ¶40 ("The settlement of time-consuming litigation is encouraged and generally favored in bankruptcy.") (citations omitted).

*The Settlement Agreement Requires Impossible Modifications to the Plan*

14. In order to secure Manchester Securities' affirmative vote with respect to the Plan, Section VIII of the Settlement Agreement requires that the Plan be amended by January 18, a federal holiday, in three respects. The first two are superfluous because, in the view of the Debtors and their plan proponents, the Plan already contains the treatment bargained for by the Creditor Parties, including payment of the New DIP Facility on the Effective Date of the Plan.

15. The last requirement of the Settlement Agreement is that the Plan be amended to provide the Creditor Parties with "a release from any third party that might claim against a Creditor Party." Settlement Agreement, § VIII.C. Manchester Parties are already "Released Parties" under the definition in the Plan, and it is the intention of the parties to the Global Agreement to include all of those parties among Released Parties to the fullest extent

permitted by applicable law. Neither the Motion nor the Settlement Agreement articulate any specifics as to how the Plan releases should be modified. Even assuming they did, it would be wholly inappropriate for the Manchester Parties to utilize the Settlement Agreement and related Motion as a platform for a public negotiation of reorganization terms.

*The Settlement Agreement Is Based on an Order which Is Not Effective*

16.    It is the Debtors' understanding that the Creditor Parties and the Committee finalized the Settlement Agreement on the evening of the January 8, 2016 in part because the Creditor Parties refused to further extend the Committee's challenge rights under the Final DIP and Cash Collateral Order. In addition, the provisions of the Settlement Agreement regarding the fees allegedly payable to advisors of the Creditor Parties are premised on the same order. However, as noted above, the Creditor Parties have continued to insist that the Final DIP and Cash Collateral Order is not in effect because the parties have not finalized their plan negotiations. Accordingly, it seems unfair for the Creditor Parties to use an artificial deadline to pressure a fiduciary to agree to an ill-advised deal. See In re Masters Mates & Pilots Pension Plan & IRAP Litig., 957 F.2d 1020, 1026 (2d Cir. 1992) (a court may only approve a settlement if is fair and reasonable ); see also, Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983) ( "[i]n making the reasonableness determination the court is under the mandatory duty to consider the fairness of the decree to those affected."). At a minimum, there is no urgency for the Settlement Agreement to be approved at this time, as opposed to the settlement being considered in connection with confirmation of the Plan.

*The Fees and Expenses of the Creditor Parties Should Be Subject to Appropriate Review*

17.    The Settlement Agreement requires the Committee to acquiesce in the payment of substantial fees on behalf of the Creditor Parties. See Settlement Agreement, § VI.

NAI-1500639728v6                                    -10-

Based on the submission of recent invoices, such fees are on par with those of the Debtors' professionals themselves. Contemporaneously with or shortly following the filing of this Objection, the Debtors intend to seek the appointment of a fee examiner, which relief is supported both by the Committee as well as by the Office of the United States Trustee. Given the size of fees potentially to be awarded as well as the complexity of these chapter 11 cases, the Debtors have determined that it is appropriate to subject fees generally to independent review in order to mitigate the corresponding burdens on the Court and the Office of the United States Trustee. To the extent the Settlement Agreement does not seek to circumvent such a process, there is no objection. For the avoidance of doubt, the provisions of the Settlement Agreement regarding fees and expenses should be subject to the review of any fee examiner.

*The Settlement Agreement Is Internally Inconsistent Regarding Payment of the New DIP Facility*

18.     Section VIII.B. of the Settlement Agreement requires that the Plan be amended to provide for the repayment of the New DIP Facility on the Effective Date of the Plan, which will certainly occur after the conclusion of the confirmation hearing scheduled for February 1, 2016. However, in that same Section VIII, the maturity of the New DIP Facility is extended only to January 31, 2016. Courts have denied settlements where settlement provisions were ambiguous. See In re Telcar Grp., Inc., 363 B.R. 345, 356 (Bankr. E.D.N.Y. 2007); In re Arkoosh Produce, Inc., 2003 WL 25273746, at *12.

19.     In order to take advantage of the wide-ranging relief sought in the Settlement Agreement, the Creditor Parties should be willing to afford a reasonable time following confirmation in order for the Plan to become effective. In the absence of such a modest accommodation, the benefits of the Settlement Agreement would be rendered illusory.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that the Court: (a) deny approval of the Settlement Agreement, or, in the alternative, (b) defer consideration of the Settlement Agreement until the confirmation hearing set for February 1, 2016 and (c) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: January 18, 2016

**JONES DAY**

By: /s/ Bennett L. Spiegel

Richard L. Wynne, Esq.
Bennett L. Spiegel, Esq.
Lori Sinanyan, Esq. (admitted *pro hac vice*)
222 East 41st Street
New York, NY 10017
Tel: (212) 326-3939
Fax: (212) 755-7306
E-mail: rlwynne@jonesday.com
blspiegel@jonesday.com
lsinanyan@jonesday.com

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Craig A. Wolfe, Esq.
Malani J. Cademartori, Esq.
Blanka K. Wolfe, Esq.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 653-8700
Fax: (212) 653-8701
E-mail: cwolfe@sheppardmullin.com
mcademartori@sheppardmullin.com
bwolfe@sheppardmullin.com

*Co-Counsel to the Debtors and Debtors in Possession*