ROPES & GRAY LLP
Keith H. Wofford
James A. Wright III
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

-and-

O'MELVENY & MYERS LLP
Daniel S. Shamah
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Evan M. Jones (*pro hac vice*)
400 South Hope Street
18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Co-counsel to the Manchester Parties*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RELATIVITY FASHION, LLC, *et al.*, | ) | Case No. 15-11989 (MEW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**MANCHESTER PARTIES' REPLY
IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE APPROVING THE SETTLEMENT
AGREEMENT BETWEEN THE COMMITTEE AND THE MANCHESTER PARTIES**

The Manchester Parties[1] hereby submit this Reply in support of *The Official Committee of Unsecured Creditors' Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving the Settlement Agreement Between the Committee and the Manchester Parties*, filed January 8, 2016 (Docket No. 1223) (the "Settlement Motion") and in response to the Objections of the Debtors and their CEO, Ryan Kavanaugh ("Kavanaugh") (Docket Nos. 1282 and 1283, respectively) (the "Objections") and respectfully represent and set forth as follows:

## REPLY

1. The Settlement Motion seeks approval of a settlement agreement (the "Settlement Agreement") negotiated between the Official Committee of Unsecured Creditors (the "Committee") and the Manchester Parties. The Settlement Agreement resolves alleged claims (the "Estate Claims") of the above-captioned debtors' (the "Debtors") chapter 11 estates against the Manchester Parties based on certain prepetition transactions, as discussed in detail in the Settlement Motion.

2. This Court granted the Committee standing to pursue and settle the Estate Claims in the Amended DIP Order.[2] The Committee and the Manchester Parties both expended significant resources to provide information and negotiate a settlement of the Estate Claims in a tight timeframe. The Committee and the Manchester Parties several times consensually extended the Committee's challenge period under the Amended DIP Order, to allow these negotiations to

---

[1] "Manchester Parties" means Manchester Securities Corp. ("Manchester Securties"), Manchester Library Company LLC, Heatherden Securities LLC, Heatherden Securities Corp., Heatherden Holdings LLC, Beverly Blvd 2 Holdings LLC, Beverly Blvd 2 LLC, Elliott Management Corporation, Elliott Associates, L.P., Elliott Capital Advisors, L.P., Elliott International, L.P., Braxton Associates, Inc., and Elliott International Capital Advisors Inc.

[2] *Amended and Restated Final Order Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code (I) Authorizing Debtors to Obtain Superpriority Secured Debtor-In-Possession Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Adequate Protection to the Cortland Parties and Manchester Parties and (IV) Granting Related Relief* [Docket No. 931] ¶ L(v) (the "Amended DIP Order").

54920869_6                                            2

continue. Ultimately, through the parties' hard work, consensus was reached on the Settlement Agreement.

3. The Settlement Agreement is "within the reasonable range of litigation possibilities" and therefore satisfies the requirements of Bankruptcy Rule 9019. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). Neither the Debtors nor Kavanaugh dispute the reasonableness of the consideration provided by the Manchester Parties in the Settlement Agreement. This is not surprising, since the consideration conceded by the Manchester Parties is generous, relative to the merit of the underlying claims.

4. The Settlement Agreement was negotiated at arm's length by the Creditors' Committee, a fully informed estate fiduciary which was charged by the Amended DIP Order to do an extensive investigation of potential claims. There is no implication (much less an allegation) in the Objections that the Committee was uninformed of the trade-offs among the parties to the Settlement Agreement or was acting under duress. Rather, the Debtors' complaint is that they would have negotiated a different settlement than was negotiated by the Committee.

5. Although the Debtors and Kavanaugh filed nominally separate Objections, effectively they are one and the same. The Debtors[3] and Kavanaugh (who effectively controls the Debtors) essentially want to only preserve the elements of the deal which benefit them. They would prefer that the Settlement Agreement (i) be tied to the economics of the proposed chapter 11 plan (the "Proposed Plan"), (ii) be conditioned on consummation of the Proposed Plan, and (iii) be conditioned on the support of the Proposed Plan. But the Settlement Agreement, by the deliberate intention of both the Committee and the Manchester Parties, is

---

[3] The Manchester Parties note that the Debtors already stipulated to the Manchester Parties claims and liens and released the Manchester Parties, subject to a grant of standing to the Committee to investigate claims against Manchester Securities. *See* Amended DIP Order ¶¶ L, 34.

54920869_6                                      3

NOT conditioned on those factors. The Manchester Parties made clear to the Committee that the Manchester Parties believe the Estate Claims have little value, and that the Manchester Parties would only agree to the economics in the Settlement Agreement if it were structured (i) so that the settlement would hold regardless of the Proposed Plan's fate, and (ii) so that the Manchester Parties could negotiate, and if necessary, fight, to preserve the economics that the Manchester Parties had bargained to keep for themselves rather than hand to the Committee.

6. Stated differently, the Manchester Parties place less value on a settlement that is contingent upon the Proposed Plan, whether explicitly, or implicitly by creating delay that merges the Settlement Agreement onto the Proposed Plan approval timeline. As structured, the Committee and the estates receive the benefits of the economics of the Settlement Agreement from Manchester Parties whether or not the Proposed Plan is confirmed and consummated. The economics and the structure of the Settlement Agreement are not severable, and the Committee was well aware of that fact, as is evidenced by the Motion.

7. Manchester will not agree to resolve the Estate Claims without receiving the full consideration bargained for in the negotiation. The Debtors cannot accept half the agreement and reject the parts that do not benefit them. The Manchester Parties briefly respond to the particular structural issues raised in the Objections as follows:

- The certainty of resolving the Estate Claims, whether or not a chapter 11 plan is ultimately consummated, is a material component of the Settlement Agreement, absent which the Manchester Parties would not have agreed to the consideration they are providing and which also benefits the estates.

- Unlike other chapter 11 cases where a reorganization of some kind is a near certainty or at least highly likely, there is significant doubt as to whether the Debtors' Proposed Plan will succeed. Among other things, the Proposed Plan is contingent on the Debtors procuring substantial new exit financing. The plan supplement filed January 11 revealed

that the Debtors still do not have any such committed exit financing, a mere two weeks before the scheduled start of confirmation.[4]

- Resolving issues with respect to the Proposed Plan is beyond the Committee's mandate under the Amended DIP Order. The Committee resolved the issues it was appointed as an estate representative to resolve: the Estate Claims.

- The Debtors' argue that settlements outside of a chapter 11 plan are not permitted under Bankrutpcy Rule 9019, because they do not resolve every issue theoretically capable of being resolved. This is not the law. *See, e.g.*, *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 633, 644 (Bankr. S.D.N.Y. 2012) (approving trustee's partnership contribution settlement plans with law firm's former partners pursuant to Bankruptcy Rule 9019 even though settlement plans did not resolve unfinished business claims or "Jewel" claims against some partners); *Wilmington Trust Company v. Weinstein (In re Community Bancorp)*, 2013 WL 4441925, at *2, *19 (9th Cir. B.A.P. Aug. 20, 2013) (affirming bankruptcy court's order approving trustee's settlement agreement with FDIC pursuant to Bankruptcy Rule 9019 in respect to certain tax refunds, even though FDIC explicitly retained claims in respect of estate's other major asset (insurance policies) as well as any other assets that trustee recovered).

8. The Debtors and Kavanaugh also argue that the Settlement Agreement violates a signed term sheet, which purportedly binds Manchester Securities to accept claim treatment as a general unsecured claim under the Proposed Plan.[5] Those term sheets are not legally relevant to whether the Settlement Agreement meets the legal standard for approval under Bankruptcy Rule 9019; the economics being ceded to the Committee and the estates are clear from the Settlement Motion and the Settlement Agreement. The Manchester Parties further respond as follows:

- The Court's prior orders, entered following the parties' negotiations, make clear that the alleged "waiver" by the Manchester Parties of its secured creditor rights does not exist. The Amended DIP Order provides for a continuation of lien intercreditor rights (which were otherwise terminated) in favor Kavanagh and Nicholas only to the extent of $30 million, rather than in favor of their entire outstanding TLA/TLB claim balance (reportedly $165 million). *See* Amended DIP Order ¶45. The only reason to clarify this limited remaining lien priority versus Manchester Securities in a liquidation scenario is because without that preservation, Manchester Securities would have potential prior

---

[4] Indeed, despite persistent optimistic statements from the Debtors and Kavanaugh at recent hearings, it appears the Debtors continue to lack any committed exit financing today, even though the voting deadline for the Proposed Plan is tomorrow.

[5] The irony of this argument is probably not lost on the Court, given the objectors' earlier statements with respect to those term sheets.

secured creditor rights. It is plain from the Amended DIP Order that even the objectors knew of Manchester Securities' continued secured creditor rights and that no "waiver" existed, as they now allege.

- The attempt of the objectors to invoke the term sheets, if it is designed to provoke an evidentiary hearing and attendant delays, endangers the Settlement Agreement. The Settlement Agreement has clear approval deadlines, intended to forestall *de facto* linkage of the Settlement Agreement and the Proposed Plan. Delay is a problem, because avoidance of such tactical delays was a condition to the Manchester Parties agreeing to the economics.

- As this Court is aware, on multiple occasions the Manchester Parties have suggested providing the various signed term sheets among the Debtors, Kavanaugh, and certain Manchester Parties to the Court and making them available publicly. The Debtors and Kavanaugh have opposed this at every turn, most recently in a chambers' conference last week. And yet the Debtors have now excerpted part of these same term sheets into their Objection and seek to stop (or tactically delay) the Settlement Agreement based on a purported inconsistency. The Court should not permit this conduct.

- The Debtors and Kavanaugh have provided no evidentiary support to show how the contents of the term sheets render the Settlement Agreement unreasonable, especially since the consideration being offered by the Manchester Parties is not limited to the Proposed Plan.

- Contemporaneously with this Reply, the Manchester Parties have provided counsel to the Debtors and Kavanaugh with a detailed letter explaining the many ways in which their clients have breached the term sheets in the Proposed Plan.

9. Third, the Debtors and Kavanaugh argue the Amended DIP Order (which is now final and unappealable, and has been for months) is somehow not in effect. The multiple extensions of the Committee's challenge deadline, among other things, make plain that the Amended DIP Order was and is in effect. The Manchester Parties further respond (again, briefly) as follows:

- The Court entered the Amended DIP Order on the docket on November 3, and it has become a final order no longer subject to further appeal. This alone should end the inquiry.

- Since the Amended DIP Order was entered, several stipulations extending the Committee's challenge deadline under the Amended DIP Order have been entered without objection or comment by the Debtors or Kavanaugh. The Manchester Parties relied on those stipulations and orders in undergoing a wide-ranging and expensive

54920869_6                                    6

investigation of alleged claims that have little or no merit (some of which, for example, are time-barred).

- The amended DIP Credit Agreement, which has never been signed because of a failure to reach agreement on several remaining open issues, would have extended the maturity of the DIP Facility to January 15. Today is January 19. The Debtors have received the benefits of the Amended DIP Order: a *de facto* maturity extension to mid-January and a rapid and efficient information exchange, negotiation, and now settlement regarding the Estate Claims. Having received the benefits, the Debtors and Kavanaugh cannot now credibly claim the Amended DIP Order was never in effect.

10.    Finally, the Debtors and Kavanaugh oppose the approval of the Manchester Parties' fees in the Settlement Agreement under the fee provisions of the Amended DIP Order.

The Manchester Parties respond as follows:

- The Amended DIP Order contains fee provisions which were extensively negotiated by the parties, including the Debtors and Kavanaugh. *See* Amended DIP Order ¶20. The Committee has reviewed the fees identified in the Settlement Agreement for reasonableness. The Debtors have also had the time required by the Amended DIP Order to conduct their own review. The Amended DIP Order is final and its fee provisions cannot now, after the Debtors have received the benefits of the Amended DIP Order, be revoked. While there are other fees to which the Manchester Parties are entitled under the Amended DIP Order, an essential element of the commercial deal embedded in the Settlement Agreement is the completion of the review for reasonableness, approval, and payment of a subset of those fees, concurrent with the approval of the Motion. Again, this is an instance of the Debtors preferring a different deal than was agreed by the Committee, which is not a barrier to approval under the Bankruptcy Rule 9019 standard.

- The fee provisions of the Settlement Agreement were extensively negotiated between the Committee and the Manchester Parties.

54920869_6                                    7

WHEREFORE, the Manchester Parties request that the Court overrule the Objections, grant the Settlement Motion, enter the proposed order approving the Settlement Agreement, and grant such other relief as is just and proper.

Dated: January 19, 2016
      New York, New York

**ROPES & GRAY LLP**

/s/ Keith H. Wofford
Keith H. Wofford
James A. Wright III
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: keith.wofford@ropesgray.com
Email: james.wright@ropesgray.com

-and-

O'MELVENY & MYERS LLP
Daniel S. Shamah
7 Times Square
New York, NY 10036
Tel:   (212) 326-2000
Fax:   (212) 326-2061
Email: dshamah@omm.com

Evan M. Jones (*pro hac vice*)
400 South Hope Street
18th Floor
Los Angeles, CA 90071
Tel:   (213) 430-6000
Fax:   (213) 430-6407
Email: ejones@omm.com

*Co-counsel to the Manchester Parties*