UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

RELATIVITY FASHION, LLC, *et al.*,

Debtors.

Chapter 11

Case No. 15-11989 (MEW)

(Jointly Administered)

---

### DECLARATION OF RYAN C. KAVANAUGH IN SUPPORT OF MOTION TO ENFORCE THE PLAN OF REORGANIZATION RELEASE AND INJUNCTION

RYAN C. KAVANAUGH, pursuant to 28 U.S.C. § 1746, declares the following under penalty of perjury:

1. I am a film producer and film financier and a co-founder of the above-captioned debtors ("Debtors"). I am currently the Chief Executive Officer ("CEO") and co-manager of reorganized Relativity Holdings, LLC ("Holdings").

2. On July 30, 2015 ("Petition Date"), I was the CEO of the Debtors and a member of the Board of Managers of Holdings.

3. In my capacity as CEO I have a myriad of responsibilities, including raising capital on behalf of the Debtors to ensure their financial health and survival.

4. During the period prior to the Petition Date and during the bankruptcy cases, the Debtors' Board of Managers, which included as a member Carey Metz ("Metz"), specifically tasked me to raise capital for the Debtors.

5. In furtherance of those efforts, on June 24, 2014, Metz and Holdings entered into a Subscription Agreement pursuant to which Metz purchased a number of Class A Units of Holdings. Attached as **Exhibit A** hereto is a true and correct copy of the Subscription Agreement.

6. The funds paid by Metz in connection with the Subscription Agreement, in the

1

amount of $2,500,000.00, were wired by Metz directly to the Debtors on the same date as the date of the Subscription Agreement. Attached as **Exhibit B** hereto is a copy of the wire confirmation.

7. At the time Metz made this investment, I was drawing a salary of only $1.00 per year as compensation for my role as CEO.

Dated: May 2, 2018

_____
RYAN C. KAVANAUGH

FF\7367357.3

# EXHIBIT A

15-11989-mew    Doc 2318    Filed 05/02/18    Entered 05/02/18 14:38:37    Main Document
Pg 3 of 12

**Relativity Holdings LLC**
**Subscription Agreement**

June 24, 2015

Relativity Holdings LLC
9242 Beverly Boulevard, Suite 300
Beverly Hills CA  90210

Gentlemen:

The undersigned ("Subscriber") hereby subscribes and agrees to purchase for the number of Class A Units ("Subscribed Securities") of Relativity Holdings LLC, a Delaware limited liability ("Company"), as set forth below:

1. In order for Company to offer and sell the Subscribed Securities in accordance with state and federal securities laws, Subscriber represents, warrants and covenants to Company as follows:

(a) Subscriber's investment was not solicited by any form of general solicitation or general advertising, including, but not limited to, any advertisement, article, notice, or other communication published in any newspaper, magazine, or similar media or broadcast over television, radio, or Internet, or in connection with any seminar or meeting to which Subscriber was invited by any general solicitation or general advertising.

(b) Subscriber acknowledges that the purchase of the Subscribed Securities constitutes a high-risk investment and, accordingly, that Subscriber may lose Subscriber's entire investment in Company. Subscriber acknowledges that no market for resale exists for the Subscribed Securities, and no such market may ever exist, and Subscriber is prepared to bear the risk of Subscriber's investment in Company indefinitely.

(c) Subscriber acknowledges and agrees that the Subscribed Securities have not been registered under the Securities Act of 1933, as amended (the "Act") or the securities laws of any other jurisdiction. Subscriber is buying the Subscribed Securities for Subscriber's own account and without a view to the distribution thereof and understands that Subscriber will not be permitted to transfer any of the Subscribed Securities, unless they are registered under the Act, or an exemption from such registration is available. In addition, the Subscribed Securities are subject to contractual transfer restrictions, set forth in Company's Amended and Restated Limited Liability Company Agreement, as the same may be amended from time to time ("LLC Agreement"). Subscriber acknowledges that any certificate representing any of the Subscribed Securities will bear a legend to such effect and that Company will not register transfer of any of the Subscribed Securities, unless Company determines that the conditions for lawful transfer have been satisfied.

(d)     Subscriber is an accredited investor, as meant by Regulation D under the Act, because (initial appropriate clause):

(i)     **For Subscribers that are organizations:**

\_\_\_\_\_ Subscriber is a bank, as defined in section 3(a)(2) of the Securities Act, or savings and loan association or other institution, as defined in section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity; a broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934, as amended; an insurance company, as defined in section 2(a)(13) of the Securities Act; an investment company registered under the Investment Company Act of 1940 or a business development company, as defined in section 2(a)(48) of that act; a Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; a plan established and maintained by a state, its political subdivisions, or an agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, having total assets in excess of $5,000,000; an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, (x) for which the decision to invest in the Subscribed Securities is made by a plan fiduciary, as defined in section 3(21) of such act, that is a bank, savings and loan association, insurance company, or registered investment adviser, (y) that has total assets in excess of $5,000,000, or (z) if a self-directed plan, for which investment decisions are made solely by persons that are accredited investors;

\_\_\_\_\_ a private business development company, as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

\_\_\_\_\_ an organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

\_\_\_\_\_ a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, for which the decision to invest in the Subscribed Securities is being directed by a sophisticated person as described in Securities Act Rule 506(b)(2)(ii);or

\_\_\_\_\_ an entity in which all of the equity owners are accredited investors; or

(ii)    **For Subscribers that are individuals:**

__X__ Subscriber's individual net worth or joint net worth with Subscriber's spouse, exceeds $1,000,000 (for purposed of this representation, "net worth" means the excess total of assets at fair market value (including personal and real property, but excluding the fair market value of the primary residence of Subscriber and his or her spouse) over total liabilities (excluding any mortgage on the primary residence of Subscriber and his or her spouse in an amount up to the fair market value of the residence, but including and mortgage amount in excess of the fair market value of the residence));

2

                __X__ Subscriber had income of $200,000, or joint income with Subscriber's spouse of $300,000 in each of the past two years, and Subscriber reasonably expects the same income in the current year; or

                _____ Subscriber is a director or an executive officer of Company.

        (e)    Subscriber has sufficient investment experience, particularly regarding high-risk investments, that Subscriber is capable of evaluating the risks of purchasing the Subscribed Shares. The Subscribed Securities are a suitable investment for Subscriber, in which Subscriber has been advised by its counsel that Subscriber is authorized by law to invest.

        (f)    Company has delivered or made available to Subscriber a copy of this Subscription Agreement, Company's term sheet, management PowerPoint presentation, risk factors, and other investment materials contained in the Relativity Media Investor Dataroom (the "Investor Packet") and of the LLC Agreement. Subscriber has carefully reviewed and fully understands the information contained in the Investor Packet and the terms of the LLC Agreement (except that the foregoing does not constitute a representation that Subscriber has reviewed each agreement referred to in the LLC Agreement). Subscriber acknowledges that, although Company has included in the Investor Packet information that it believes to be useful in evaluating an investment in Company, Company does not warrant that all information necessary to making such an evaluation is included or that all information contained in the Investor Packet is accurate or complete. Subscriber acknowledges that any projections contained in the Investor Packet, although prepared in good faith, based on assumptions Company considered reasonable at the time, do not constitute representations or warranties of Company's future performance, and actual results may differ entirely from those projected. Accordingly, Subscriber acknowledges that Subscriber has made all independent investigation Subscriber considers necessary to make an informed decision to purchase the Subscribed Securities and that, at a reasonable time before Subscriber executed this Agreement, Company gave Subscriber an opportunity to ask questions and receive answers concerning the terms and conditions of the offering of Subscribed Securities and to obtain additional information necessary to verify the accuracy of the Investor Packet, information contained in the business plan or otherwise furnished by Company and its representatives to Subscriber. Subscriber shall maintain all information included in the Investor Packet or otherwise furnished by Company to Subscriber as contemplated hereby, as well the terms of the LLC Agreement, in strict confidence and use such information solely in connection with Subscriber's consideration of Subscriber's investment in Company. Subscriber shall not make any public announcement or issue any press release regarding the subject matter hereof without Company's prior written consent.

        (g)    Subscriber has not received or relied on any investment, legal, or tax advice from Company or any of its management or representatives.

        2.    Subscriber acknowledges that Company is relying on the foregoing representations and warranties in offering the Subscribed Securities pursuant to an exemption from the Act and accordingly agrees to indemnify and hold harmless Company from and with respect to any claim, loss, or expense (including attorney's fees and expenses) resulting from any breach of any such representation or warranty. Without limiting the foregoing, Subscriber agrees

to so indemnify Company respecting any unsuccessful action that Subscriber may bring under the Act, the Securities Exchange Act of 1934, or securities law of any other jurisdiction.

        3.        Subscriber acknowledges that the purchase of the Subscribed Securities is a speculative investment involving a high degree of risk, and should not be purchased by anyone who cannot afford the loss of his or her entire investment. Subscriber further acknowledges that Company has provided and Subscriber has reviewed and considered the risk factors set forth in various places in the Investor Packet, including without limitation this Subscription Agreement, and those additional risk factors attached as <u>Exhibit A</u> hereto entitled "Risk Factors", as well as the other information set forth herein and therein, before subscribing for any Subscribed Securities.

        4.        Subscriber acknowledges that Company's obligations pursuant to Section 3.2(b) of the LLC Agreement apply to Subscriber's subscription, and Subscriber furthermore agrees that Company, in its sole discretion, may accept all, part, or none of Subscriber's subscription and accordingly terminate this Subscription Agreement at any time. Subscriber shall purchase and pay for all Subscribed Securities respecting which Company shall accept Subscriber's subscription, and Subscriber tenders herewith payment for the full amount of the Subscribed Securities. Should Company reject or accept only in part Subscriber's subscription, Company will refund any excess payment. Subscriber agrees to be a party to the LLC Agreement, as a Class A Member, insofar as Company accepts Subscriber's subscription. Subscriber shall execute all such further agreements and documents as Company shall require to effectuate the transactions contemplated hereby.

        5.        This Agreement shall be governed by, construed, interpreted, and enforced in accordance with the laws of the State of Delaware, without regard to choice or conflicts of laws principles that would result in the application of the substantive laws of any other jurisdiction.

        6.        Any notice authorized or required to be given hereunder shall be in writing and deemed given or made, if by hand or courier service by 4:00 P.M. (Pacific time) on a business day, addressee's day and time, on the date of delivery, and otherwise on the first business day after such delivery; if by fax, on the date that transmission is confirmed electronically, if by 4:00 P.M. (Pacific time) on a business day, addressee's day and time, and otherwise on the first business day after the date of such confirmation; or five days after mailing by certified or registered mail, return receipt requested; and sent to Company at the address above or to Subscriber as set forth below.

| Number of Class A Units (Subscribed Securities) | X | Purchase Price Per Unit | = | Total Purchase Price |
|---|---|---|---|---|
| 2,257,744.06 | | $1.1073[1] | | $2,500,000 |

Very truly yours,

*/s/ Carey Metz*

CAREY METZ

Name: Carey Metz

Address: REDACTED

Telephone: REDACTED

Fax: REDACTED

email: REDACTED

TIN/SSN: REDACTED

---

[1] The Purchase Price Per Unit is based on a $250 million valuation of the Company on a fully diluted basis as of June 17, 2015.

5

RELATIVITY HOLDINGS LLC
hereby accepts the above subscription, as to

_____ Class A Units
(All, or number of Units, if not all)

By: /s/ _____
Name:
Title:

## Exhibit A

[Relativity Holdings LLC Risk Factors]

# EXHIBIT B



```
             If you have questions regarding this Wire Transfer
                  please call (213)673-7825 or (800)575-5502.

ADVICE OF CREDIT
================

AMOUNT:                          $ 2,500,000.00
                                    REDACTED
ACCOUNT #:

ACCOUNT NAME:                    RELATIVITY MEDIA, LLC

TRANSACTION:                     20150624-0008818

FROM:                            CHASE MANHATTAN BANK

FED REFERENCE:                   0624B1QGC07C007831

ORIGINATOR:                      CAREY METZ
                                    REDACTED

RECEIVER:                        RELATIVITY MEDIA, LLC
                                 "MAIN OPERATING ACCOUNT"
                                 9242 BEVERLY BLVD SUITE 300
                                 BEVERLY HILLS CA 90210

ORIGIN TO BENEFICIARY:           CAREY METZ

SENDER REFERENCE:                   REDACTED

ORIGINATOR REFERENCE:               REDACTED
```

*Disclaimer: the information contained in this facsimile transmission is confidential and may also contain legally privileged information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile transmission in error, notify the sender immediately by telephone and return the original message to us by mail. Thank you.*